FILED

2014 NOV -4  PM 12: 04

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

E-VENTURES WORLDWIDE, LLC,
9045 Strada Stell Court, Suite 103,
Naples, FL 34109,

    Plaintiff,

v.

GOOGLE, INC.,
1600 Amphitheatre Parkway
Mountain View, CA 94043,

    Defendant.

: Civil Action No. _____

: JURY TRIAL DEMANDED

: 2:14-cv-646-FtM-29CM

## VERIFIED COMPLAINT, DAMAGES AND INJUNCTIVE RELIEF SOUGHT, AND DEMAND FOR JURY TRIAL

1.    Plaintiff e-ventures Worldwide, LLC ("e-ventures"), asserts this complaint against defendant Google, Inc. ("Google"), based upon Google's conduct in completely removing almost every website associated with e-ventures from Google's "natural" search listings. Despite e-ventures' exhaustive efforts to cause its websites to be relisted in Google's search results over the past month, Google is still manually excluding e-ventures' websites from appearing anywhere in Google search results. Given that Google controls 70-90% of the global search market, Google's unjustified decision to "delist" e-ventures' websites from Google's search results is crippling to e-ventures' business.

2.    Google's decision is also contrary to its policies governing content removal. Google purports to remove website content only in very limited circumstances such as for obscenity, for intellectual property violations, to ensure personal privacy (such as when a consumer's social security or bank account numbers are posted), to protect users from harmful

4463217 v1

software or malware, or to comply with a court order. Even where the removal is pursuant to a court order, to further Google's purported commitment to transparency, Google includes the following notice to the public:

> "In response to a legal request submitted to Google, we have removed 1 result(s) from this page. If you wish, you may read more about the request at ChillingEffects.org."

Google's partner ChillingEffects.org purports to "let Internet users see the source of content removals."

3. In this case, no notice to the public was posted even though Google removed 231 of e-ventures' 232 websites from its search results, for no apparent reason other than the websites' affiliation with e-ventures. When e-ventures attempted to create new websites to mitigate e-ventures' damages (new websites that there was no basis for removing), Google researched the source of those websites, determined the source of those websites was e-ventures, and completely removed those websites from its natural search results as well.

4. For the reasons set forth below, e-ventures asserts claims against Google under the Florida Deceptive and Unfair Trade Practices Act, for tortious interference and for defamation.

5. In addition, e-ventures seeks an injunction enjoining Google's manual actions that exclude e-ventures' websites from Google's search results, even where those websites have not engaged in any objectionable conduct and/or any conduct that warrants removal under Google's own published policies.

## THE PARTIES

6. e-ventures is a limited liability company organized and existing under the laws of Indiana with its principal place of business at 9045 Strada Stell Court, Suite 103, Naples, Florida 34109.

2

4463217 v1

7.  Defendant Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

8.  Google advertises, solicits clients, and conducts substantial amounts of business in the state of Florida and within this district, subjecting it to personal jurisdiction in this district.

## JURISDICTION AND VENUE

9.  This court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2)because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

10. Venue is proper in this district under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to e-ventures's claims occurred in this district.

11. Venue is also proper in this district under 28 U.S.C. §§ 1391(b)(1) and (c) because Google is a corporation whose contacts would be sufficient to subject it to personal jurisdiction in this district.

## FACTS

### A. The Parties' Businesses

12. e-ventures is an online publishing and research firm that reviews products and services in various industries.

13. e-ventures' services are described at www.eventuresworldwide.com.

14. e-ventures' websites focus on different industries, but e-ventures specializes in the "search engine optimization" or "SEO" industry. The majority of e-ventures' revenues arises from SEO industry members.

15. "SEO" is the process of affecting the visibility of a website or a web page in a search engine's "natural" or unpaid search results.

16.     Google provides the world's most powerful search engine, with approximately 70% of the United States' search market and 90% of Europe's search market.

17.     Accordingly, SEO companies generally focus on how their clients' websites can be ranked higher in Google's natural or unpaid search listings.

18.     The "SEO" services advertised on e-ventures' websites reduce Google's revenues, because if companies are successful in achieving website prominence in Google's natural search listings, there is less of a need for those companies to purchase Google's "AdWords" advertising services. If companies pay SEO providers to increase their visibility on Google, those are also marketing dollars that those companies are not paying to Google instead.

19.     Approximately 99% of Google's revenues are derived from Google's online advertising services.

20.     Consumers' ability to locate e-ventures' websites online, particularly through Google's search engine, is crucial to e-ventures' online publishing business.

**B.    Google's Expressed Policies Governing Content Removal**

21.     Google informs consumers that Google's search results are largely the result of mechanical algorithms and that Google does not remove content from its search results except in the very limited circumstances described below.

22.     Google claims that: "Google's index merely reflects that the page exists on the wider web, and not that Google endorses it."

23.     Google states: "Google search results are a reflection of the content publicly available on the web" and "search engines can't remove content directly from websites." *See* https://www.google.com/intl/en/policies/faq/:

**How can I remove information about myself from Google's search results?**

Google search results are a reflection of the content publicly available on the web. Search engines can't remove content directly from websites, so removing search results from Google wouldn't remove the content from the web. If you want to remove something from the web, you should contact the webmaster of the site the content is posted on and ask him or her to make a change. Once the content has been removed and Google has noted the update, the information will no longer appear in Google's search results. If you have an urgent removal request, you can also visit our **help page** for more information.

24. The referenced "help page" states: "If you want to remove a photo, link to a profile, or webpage from Google Search results, you usually need to contact the website owner (webmaster) and ask them to remove the information...See our Removals Policies to learn more about what information Google will remove."

25. The referenced "Removals Policies" page states: "This page explains our policies for different types of content that Google will remove from web, image or video results." The page identifies certain limited content that may be removed by Google. Nowhere on this page does Google state that it will remove content that Google dislikes, content that purportedly diverts advertising dollars that might otherwise be spent on Google services, or that Google identifies for removal for other reasons.

26. Google also includes a "Transparency Report" at http://www.google.com/transparencyreport/, which identifies limited circumstances in which search results are removed, such as for intellectual property violations, the inclusion of malware (websites dangerous to users), and for compliance with court orders. Google does not reveal in this transparency report that Google is removing websites that Google dislikes for other reasons.

27. Google claims that Google is "committed to leading the industry in transparency" and that Google publishes data that "sheds light on how laws and policies affect Internet users and the flow of information online."

28. Google also states: "Chilling Effects posts and analyses copyright removal requests (among other types of content removal requests) from a number of participating companies on its website. We link in our search results to the requests published by Chilling Effects in place of removed content when we are able to do so legally."

29. Google's published policies are misleading to the public because they are inconsistent with the conduct that Google has demonstrated in this case.

**B.  Google's Removal of e-ventures Websites**

30. e-ventures has offered its publishing services through numerous websites for the past twelve (12) years, and this is the first time that e-ventures has ever been manually penalized by Google.

31. Prior to September 2014, e-ventures had not instituted any significant or sudden changes in its website content that would have prompted Google to suddenly "delist" its websites or to treat e-ventures' websites any differently than Google had before.

32. e-ventures received information indicating that on or about September 15, 2014, a third party with a personal vendetta against e-ventures had caused Google to receive false information about e-ventures' websites. e-ventures is still investigating whether or not this incident is related to Google's conduct in this case. The timing of the two events is certainly suspicious.

33. On September 19, 2014, e-ventures received 231 notifications from Google claiming that the 231 websites associated with e-ventures' Webmaster Tools account were being removed by Google because they had been identified as "pure spam."

34. The 231 websites included almost every website owned by e-ventures (231 out of the 232 websites associated with its "Webmaster Tools" account), including "corporate"

websites, brand new websites, and websites that could not have engaged in any activities which could possibly be classified as "spam."

35. Upon receipt of these Google notifications, e-ventures immediately began researching the possible basis for Google's notifications, without success. e-ventures began making every possible change to its websites that e-ventures could conceive of in order to get its websites "relisted," but to no avail.

36. e-ventures has since learned that "pure spam" is a Google term, defined vaguely to include various types of website content that Google "dislikes." As such, identifying what Google believes is "pure spam," and remedying the problem to remove the "pure spam" designation, without any specificity from Google, is a potentially insurmountable task.

37. Upon information and belief, Google has previously characterized websites advertising or promoting SEO services, which negatively impact Google's bottom line, as "pure spam."

38. e-ventures repeatedly attempted to address with Google the reasons for Google's designation of its websites were "pure spam," to no avail.

39. e-ventures made significant changes to its websites and filed multiple resubmission requests, to no avail.

40. e-ventures attempted to mitigate its damages by creating new websites, to no avail. Google also delisted those.

41. e-ventures sent letters to Google from counsel, to no avail.

42. e-ventures notes that "spam" is not even a reason for removal identified in Google's Removal Policies, which are quoted above.

C. **Irreparable Harm and Damages**

43. Google's decision to delist almost all websites associated with e-ventures from its search results continues to cause irreparable harm to e-ventures' business operations.

44. e-ventures has contracts with third parties that have been and are continuing to be damaged by Google's conduct.

45. Google's manual actions, which Google has not justified or explained, are preventing e-ventures' business partners, customers, and prospective customers from locating e-ventures' websites.

46. Currently, when an individual searches for "eventures" on Google's search engine, a confusing display of third party websites for companies using the trademark "eventures" appears, but e-ventures' actual corporate websites are absent from Google's paid and unpaid search listings.

47. Google falsely states to the public that its search results reflect the websites that are available on the world wide web, and not just the websites that are endorsed by Google.

48. Google's removal of e-ventures' websites is misleading to the public because (a) the removal was done by Google surreptitiously in contravention of Google's commitments to transparency; (b) the removal contradicts Google's published policies governing content removal and policies against censorship; (c) Google portrays its search results as "natural," automatic, and unendorsed by Google; and (d) if a member of the public ever realizes that e-ventures' websites have been removed by Google, they are likely to believe that the websites have engaged in conduct that falls under the grounds for removal identified in Google's Removal Policies, when that is not the case.

49. In prior cases, Google has asserted that its power over its search listings is essentially unlimited – that a Google employee can decide to remove anything he or she wants,

for any reason whatsoever, for any time period. e-ventures respectfully disagrees; Google is not immune from liability when it surreptitiously, wrongfully, manually and entirely removes hundreds of websites that are not engaging in any objectionable conduct, in contravention of Google's own published statements concerning content removal.

## FIRST CAUSE OF ACTION
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

50. e-ventures incorporates by reference each and every allegation of the paragraphs above.

51. e-ventures is a "consumer" as defined in the Florida Deceptive and Unfair Trade Practices Act, § 501.203(7).

52. e-ventures has its headquarters in Florida, designed the websites at issue in Florida, and suffered damages, including irreparable harm, as a result of Google's wrongful actions, in Florida.

53. Google does business in Florida and was engaged in "trade or commerce" under the Act.

54. Google committed unfair methods of competition or unfair or deceptive acts or practices under the Act by engaging in the conduct described above.

55. Google's actions were misleading to consumers for the reasons set forth above.

56. Google's actions contradicted its published statements concerning censorship, transparency, content removal, and notice to the public, as set forth above.

57. e-ventures suffered actual damages proximately caused by violation of the Act.

58. The practices are likely to deceive consumers acting reasonably, and have in fact already deceived consumers into believing (a) that Google only removes content that violates its Removal Policies; and (b) that e-ventures has violated those Removal Policies, resulting in

9

Google permanently "banning" e-ventures from its search listings, "punishing," or "censoring" e-ventures.

59. As a result of Google's conduct, e-ventures has been, and, absent injunctive relief, will continue to be, irreparably harmed by Google's actions.

60. e-ventures has no adequate remedy at law for the foregoing wrongful conduct.

61. Google's trade practices have damaged e-ventures in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## DEFAMATION

62. e-ventures incorporates by reference each and every allegation of the paragraphs above.

63. Google has argued that its search results are "speech" protected by the First Amendment, but to the extent that its search results are speech, that speech is defamatory. Google's removal of e-ventures' websites falsely indicates to the public that e-ventures' websites are not worthy of being listed on Google's search engine, because the websites meet Google's narrow criteria for website removal. However, in reality, e-ventures' websites do not fall within Google's criteria for removal.

64. Google publishes its search listings to third parties and Google's failure to list e-ventures' websites in its search results has resulted in actual damages to e-ventures.

65. Google's actions falsely convey to the public that e-ventures does not measure up to Google's published standards.

66. As a result of Google's conduct, e-ventures has been, and, absent injunctive relief, will continue to be, irreparably harmed by Google's actions.

67. e-ventures has no adequate remedy at law for the foregoing wrongful conduct.

68.  Google's defamation of e-ventures has damaged e-ventures in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### TORTIOUS INTERFERENCE

69.  e-ventures incorporates by reference each and every allegation of the paragraphs above.

70.  Like other online publishing businesses, e-ventures' business is heavily dependant upon its visibility on Google's search engine.

71.  As Google is aware, e-ventures has contractual relationships with various third parties which have been damaged by Google's refusal to list e-ventures' websites on Google's search engine.

72.  In removing e-ventures' websites from its search listings, Google wrongfully and intentionally harmed e-ventures' actual and prospective business relationships.

73.  Google's conduct was not privileged, justified or excusable.

74.  Google's tortious inference with contractual relations has damaged e-ventures in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff e-ventures Worldwide, LLC asks for an order and judgment against Google:

a.  Awarding e-ventures preliminary and permanent injunctive relief in the nature of a Court order requiring Google to revoke its manual penalties excluding e-ventures' websites from Google's search results, where those websites have not engaged in any objectionable conduct and/or any conduct that warrants removal under Google's own published policies;

b. Awarding e-ventures actual, compensatory and punitive damages, and its costs and attorneys' fees, to the full extent allowed by law and specifically, by the Florida Deceptive and Unfair Trade Practices Act; and

c. Granting such other relief as this Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiff e-ventures Worldwide, LLC, hereby demands a jury trial on all issues triable by a jury in the above-captioned matter.

Dated: November 3, 2014

Respectfully submitted,

**ZUNG CLOUGH, PLLC**

*/s/John C. Clough*
John C. Clough
Florida Bar No.: 0184391
David S. Schnitzer
Florida Bar No.: 54084
8985 Fontana Del Sol Way
Naples, Florida 34109
Telephone: 239.325.1895
Facsimile: 239.325.1896
E-mail: jclough@zungclough.com
E-mail: dschnitzer@zungclough.com
E-mail: jrupert@zungclough.com
*Attorneys for e-ventures Worldwide, LLC*

OF COUNSEL:

Alexis Arena, Esquire
alexis.arena@flastergreenberg.com
**FLASTER/GREENBERG P.C.**
1628 JFK Blvd., 15th Floor
Philadelphia, PA 19103
(215) 279-9908 (phone)
*Attorneys for Plaintiff*
(*Pro hac vice* admission to be sought)

4463217 v1

## VERIFICATION

I, Priyajeev Trika, certify that I have read the foregoing Verified Complaint, and know the contents thereof. The foregoing factual statements made in support of the Verified Complaint are true to the best of my knowledge, information, and belief. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
Priyajeev Trika
President of e-ventures Worldwide, LLC

Dated: October 31, 2014