# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

|  |  |
|---|---|
| e-ventures Worldwide, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Google Inc., <br><br> Defendants. | Civil Action No. 2:14-cv-00646-JES-CM |

## GOOGLE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVID H. KRAMER (admitted *pro hac vice*)
Colleen Bal (admitted *pro hac vice* )
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

BRIAN M. WILLEN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 497-7700

NATHAN BERMAN, Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd., Suite 1200
Tampa, FL 33602
(813) 221-1010

*Counsel for Google Inc.*

Defendant Google Inc. ("Google") submits this reply brief in support of its motion to dismiss the complaint of Plaintiff e-ventures Worldwide LLC ("Plaintiff" or "e-ventures").

Plaintiff's opposition brief is a master class in misdirection. As framed by the complaint, this case is about the removal of e-ventures' websites from Google's "natural" (unpaid) search results. Compl. ¶¶ 1, 15. In its motion to dismiss (Dkt. 36) ("Mot."), Google explained that claims based on the removal of those sites are barred by the First Amendment and Section 230(c)(2) of the Communications Decency Act ("CDA") and fail as matter of Florida law. Plaintiff offers only token resistance to these arguments. Instead, it seeks to transform this case into a challenge to Google's supposed removal of e-venture's *advertisements*. Plaintiff goes so far as to submit a new declaration, which offers a series of factual allegations nowhere to be found in the complaint. This is improper. Plaintiff is bound by its complaint and cannot assert new facts to ward off a motion to dismiss. The Court should reject these unpleaded allegations out of hand. But even if Plaintiff's claims did concern paid search listings, they still would fail. Plaintiff's new allegations cannot overcome Google's constitutional and statutory protections, and they do not state a viable claim under Florida law. No matter how this case is framed, therefore, it must be dismissed with prejudice.

## I. PLAINTIFF CANNOT AVOID DISMISSAL BY CHANGING OR DISTORTING THE FACTUAL ALLEGATIONS UNDERLYING THIS CASE

The foundation of Plaintiff's complaint—stated clearly in its first paragraph—is "Google's conduct in completely removing almost every website associated with e-ventures *from Google's 'natural' search listings*." Compl. ¶ 1 (emphasis added); *id.* ¶ 15 ("natural" listings are "unpaid search results"). The complaint does *not* allege that e-ventures' sites were ever included in Google's paid listings or that Google blocked any such advertisements.[1] Google's motion addressed the case as e-ventures had framed it. Plaintiff now seems to realize that its claims regarding natural search

---

[1] The only paragraph of the complaint that even *mentions* paid search results says only that e-ventures' "actual corporate websites are absent from Google's paid and unpaid search listings." Compl. ¶ 46. This is not a claim that those sites were actually in Google's paid listings or that Google removed them.

results are doomed, so it seeks to reframe the case as one about e-ventures' use of Google's advertising services. To that end, Plaintiff submits a new declaration asserting that e-ventures used Google's "AdWords" program to run ads for some of its websites and that Google removed those paid listings as part of the action it took against e-ventures. Trika Verif. ¶¶ 3-6.

The Court should not consider Plaintiff's new allegations. In reviewing a motion to dismiss, a "court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *e.g.*, *Payne v. Ryder Sys., Inc. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997); *Hayden v. Coppage*, 533 F. Supp. 2d 1186, 1196-97 (M.D. Ala. 2008). That is precisely what Plaintiff seeks to do here. The claims made in the Trika Verification are not in the complaint. They do not provide "additional factual detail" (Opp. 2 n.1)—they instead seek to change the basic factual underpinnings of this case. Plaintiff cannot defeat Google's motion through this gambit.

But even if Plaintiff's new allegations were proper, they would not save its case. As explained below, the First Amendment and CDA fully apply to actions Google might take in regards to paid listings, and framing the case around the removal of such listings would not give Plaintiff a viable cause of action. Moreover, if Plaintiff's case really were about ads, it would fail for another reason. Google's AdWords program is governed by a written agreement, which requires "all claims arising out of or relating to" advertising to be brought in California and under California law. Decl. of Brian Willen ¶¶ 2-4 & Ex. A. Insofar as e-ventures actually wants to litigate a case about the alleged removal of its paid listings, therefore, it is contractually barred from doing so in this Court or under Florida law. *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007).

The opposition brief also takes other improper liberties. In response to Plaintiff's (now withdrawn) preliminary injunction motion, Google submitted a declaration explaining why it

removed e-ventures' websites from search results. Decl. of Brandon Falls ("Falls Decl.") (Dkt. 31). Although this declaration was not referenced in Google's motion to dismiss, Plaintiff now repeatedly cites to it—distorting at each turn what the declaration actually says:

- The declaration does not say that Google did not review e-ventures' sites. Opp. 4. To the contrary, the declaration describes Google's comprehensive review of e-ventures' network, which led Google to take action so that e-ventures could not migrate its broad-based schemes to new sites. Falls Decl. ¶¶ 29-36, 39.

- Google does not "admit[]" that its removal was triggered by an external tip. Opp. 3. The declaration explains that the tip "corroborated" Google's long experience with e-ventures' misconduct and the extensive internal analysis of e-ventures' sites that Google had already done. Falls Decl. ¶ 37.

- Google never said that its objective in removing Plaintiff's sites was "punishment." Opp. 5-6. The declaration explains that Google acted to protect its users and legitimate sites from the deceptive effects of e-ventures' schemes. Falls Decl. ¶¶ 5-7, 39-40; Mot. 3-6.

While Google's motion can be granted without regard to the Falls Declaration, Plaintiff cannot misleadingly rely on snippets of that declaration while asking the Court to ignore the facts the document actually recounts. If Plaintiff wants Google's declaration to be considered, it should be considered accurately and fully. Doing so would only confirm that Plaintiff's claims fail.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

In response to Google's First Amendment arguments, Plaintiff tries to turn this case into one about the removal of advertisements. Opp. 10-14. As discussed above, Plaintiff's new theory is not properly before the Court. But even if this case were about ads, the First Amendment would still apply. "[S]peech is not rendered commercial by the mere fact that it relates to an advertisement." *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 384 (1973). A search engine's decision not to display paid listings from websites it believes are engaged in deceptive conduct is not commercial speech for purpose of a First Amendment analysis. After all, a publisher's decision about what advertisements to run implicates similar editorial considerations as the decision about what other information to present. *Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135-36 (9th Cir. 1971) (courts cannot "compel a private

newspaper to publish advertisements without editorial control of their content"). Recognizing that, *Langdon v. Google*, 474 F. Supp. 2d 622 (D. Del. 2007), held that the First Amendment protected Google's decision to remove *both* websites and advertisements. *Id.* at 626-27, 629-30.[2]

Returning to the actual allegations in the complaint, which relate to "natural" search results, Google has explained that its results are constitutionally protected opinions. Mot. 6-7; *see Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014); *Search King, Inc. v. Google Tech., Inc.*, 2003 U.S. Dist. LEXIS 27193, at *12 (W.D. Okla. May 27, 2003); *Langdon*, 474 F. Supp. 2d at 629-630. Plaintiff's responses are anemic. Plaintiff claims that Google's decision to remove e-ventures' websites was not an "editorial" judgment. Opp. 10. Plaintiff bases this assertion largely on a distortion of the Falls Declaration. But the declaration clearly explains that Google carefully reviewed e-ventures' websites, decided to act against the entire network based on the wide-ranging nature of the misconduct and concerns that e-ventures would migrate its objectionable content to other sites that it controlled, and relisted e-ventures' sites as they made changes that brought them into compliance with Google's guidelines. Falls Decl. ¶¶ 39-45.

Beyond that, Plaintiff identifies nothing to suggest that Google's actions were not editorial. Plaintiff says that if Google were really concerned about relevance, it would have ranked e-ventures' websites lower in search results rather than removing them altogether. That makes no sense. Like a demotion in rank, a removal is an expression of a search engine's opinion about the value of a given website. Unsurprisingly, therefore, both *Langdon* and *Zhang* held that such exclusion decisions are protected by the First Amendment. Plaintiff also suggests Google's actions were "company-based" not "content-based." Opp. 12-13. This is a distinction without a difference. Google removed e-ventures' websites because of what the *content* of those sites

---

[2] Moreover, even if the exclusion of paid search listings were commercial speech, it would "not fall outside the purview of the First Amendment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 535, 553-54 (2001); *see, e.g.*, *United States v. United Foods*, 533 U.S. 405 (2001) (holding that the First Amendment prohibits government from compelling entities to pay for objectionable advertising).

indicated about the *company*—that it was engaged in pervasive violations of Google's guidelines across an interconnected network of sites. Taking that action was just as much a content-based editorial decision as it would have been to exclude only certain websites operated by e-ventures.

Equally infirm are Plaintiff's efforts to distinguish the unbroken line of cases in which courts have held that search results are protected by the First Amendment:

- Plaintiff argues that *Zhang* involved a search engine's politically motivated removal of certain types of content. Opp. 11. But it is well settled that speech need not be political to warrant First Amendment protection. *See United Foods*, 533 U.S. at 410-11. *Zhang* suggested no such limitation; to the contrary, the court made clear that "the First Amendment's protections apply whether or not a speaker articulates, or even has, a coherent or precise message." *Zhang*, 10 F. Supp. 3d at 437. Nor does the fact that the removals here were manual (rather than algorithmic) make any difference. *Zhang* explained that manual actions would have an even more obvious case for constitutional protection. *Id.* at 438-439.

- Plaintiff says that, unlike *Langdon*, "this case does not concern Google's rejection of objectionable ad content." Opp. 11. But that is contrary to Plaintiff's claim—*on the same page of its brief*—that this case involves "the removal of paid ads." *Id.* Plaintiff cannot have it both ways. In any event, *Langdon* clearly holds that the removal of *both websites and ads* is protected speech, and that was so even though the plaintiff claimed that Google removed the material for "fraudulent" reasons. *Langdon*, 474 F. Supp. 2d at 629-630.

- Plaintiff's observation that *Search King* involved a tortious interference claim (Opp. 12) does not distinguish it from this case, which involves the same claim. Moreover, Plaintiff ignores the basic holding of that case: that Google's search results "are opinions – opinions of the significance of particular web sites as they correspond to a search query." *Search King*, 2003 U.S. Dist. LEXIS 27193 at *11. As in *Search King*, Plaintiff here asks the Court to second-guess Google's judgments about what information to include in its results. The First Amendment does not allow that.[3]

### III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE CDA

Plaintiff does not dispute that the CDA protects Google against claims arising from its good faith decisions to remove material it considers objectionable. It makes three arguments against CDA immunity, but none has any merit.

---

[3] *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) does not help Plaintiff. That case held that a newspaper with monopoly power had no First Amendment right to violate the Sherman Act by refusing to run ads (without regard to their content) from anyone who advertised with a competing radio station. This case involves nothing resembling such blatantly anti-competitive conduct.

*First*, Plaintiff claims that it has carried its burden of pleading that Google did not act in good faith. But Plaintiff identifies nothing that suggests a lack of good faith. Plaintiff relies on the Falls Declaration to claim that Google acted based on "the ranting of an anonymous tipster." Opp. 15. The declaration clearly says otherwise, and indeed it only confirms Google's good faith. Falls Decl. ¶¶ 37-40. In any event, e-ventures does not explain how relying on a tip that corroborated Google's internal conclusions amounts to bad faith. Plaintiff also repeats its claim "that Google did not act in accordance with its own published Removal Policies." Opp. 15. But e-ventures can make this claim only by ignoring Google's published Webmaster Guidelines, which describe in detail Google's policies for taking action against search manipulation. Mot. 4, 16-17 & Ex. A. As for the assertion that Google did not give advance warning to e-ventures before removing its sites, nothing in the CDA requires such warnings or suggests that their absence amounts to bad faith. In *e360Insight*, for example, there was no indication that Comcast gave notice before blocking Plaintiff's emails, yet the court still found good faith. *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008). Finally, as the complaint acknowledges, Google informed e-ventures about the removals and allowed it an opportunity to obtain redress. Compl. ¶¶ 33, 39. Many of e-ventures' sites have been restored through this process—so much so that Plaintiff voluntarily withdrew its motion for a preliminary injunction. *Cf.* Falls Decl. ¶¶ 39, 41-46. This case thus is far removed from *Smith v. Trusted Universal Standards*, 2010 U.S. Dist. LEXIS 43360 (D.N.J. May 4, 2010), where the defendant told the plaintiff that its emails would not be blocked as spam if it paid for a higher level of service. Plaintiff here makes no comparable allegation, and Google has "come forward with the legitimate basis for its actions." *Id.* at *21; *cf.* Falls Decl. ¶¶ 28-40.

*Second*, contrary to what Plaintiff suggests (Opp. 15-16), search engine spam fits readily into § 230(c)(2)'s "otherwise objectionable" category. The only case Plaintiff cites confirms that. *Smith* correctly held that the CDA's "goals are served where an entity subjectively deems spam

'otherwise objectionable' and chooses to block it." *Smith*, 2010 U.S. Dist. LEXIS 43360, at *19. The court rejected "Plaintiff's argument that the blocked material must be 'obscene, lewd, filthy, excessively violent, or harassing,'" explaining that "Congress included the phrase 'or otherwise objectionable' in its list of restrictable materials, and nothing about the context before or after that phrase limits it to just patently offensive items." *Id.* at *19-20; *see also* Mot. 11 & n.4. Plaintiff further ignores the CDA's text in arguing that its websites "were not objectionable." Opp. 16. Under § 230(c)(2), the question is simply whether Google subjectively *considered* e-ventures' sites objectionable. Mot. 11-12. Google plainly did so, and the complaint does not allege otherwise.

*Third*, Plaintiff's bare assertion that "Section 230 immunity does not exist for a FDUTPA claim" (Opp. 16) is totally without merit. It is well settled that § 230(c)(2) "insulates service providers from claims premised on the taking down of a customer's posting such as breach of contract *or unfair business practices*." *Batzel v. Smith*, 333 F.3d 1018, 1030 n.14 (9th Cir. 2003) (emphasis added). Here, Plaintiff seeks to hold Google liable "based on [its] efforts to screen content"—precisely what the CDA does not allow. *Almedia v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 n.3 (11th Cir. 2006). Whether premised on FDUTPA or any other cause of action, therefore, Plaintiff's claims are barred.[4]

## IV. PLAINTIFF FAILS TO STATE A STATE-LAW CLAIM

Google's motion showed that Plaintiff's claims fail independently of the First Amendment and the CDA. The opposition brief only confirms that result.

**FDUTPA.** Plaintiff does not dispute that a FDUTPA claim can be brought only by a "consumer." Relying on its new allegations, e-ventures argues that it *is* a consumer because it advertises in Google's paid search listings. Opp. 16. These allegations are outside the complaint and should not be considered. But even if they were before the Court, the newly alleged facts could make e-ventures a consumer only in regard to a claim about advertisements—a claim

---

[4] *Almedia*'s discussion of the CDA exception for laws "pertaining to intellectual property" (456 F.3d at 1322-24) has nothing to do with this case, as Plaintiff does not assert an intellectual property claim.

Plaintiff is barred from pursuing under Florida law. *Supra* at 2. With respect to claims arising from natural search results, e-ventures was not a consumer and cannot sue under FDUTPA.

The FDUTPA claim also fails on the merits, as Plaintiff cannot point to any conduct that was deceptive or unfair. As for deception, while Plaintiff need not make an evidentiary showing at this stage, it must establish, through plausible allegations, "probable, not possible, deception." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (rejecting FDUTPA claim on a motion to dismiss). Plaintiff has not come close to doing so. Any deception claim is belied by the Google's Webmaster Guidelines, which clearly explain how Google deals with search-engine manipulation. Mot. 16-17 & n.6. Plaintiff responds by asking the Court to ignore these guidelines, but there is no reason to do so. Contrary to Plaintiff's bizarre assertion that they "exist in obscure locations on the web" (Opp. 17), the Webmaster Guidelines are published on the same website (support.google.com) as the "Removal Policies" on which Plaintiff bases its claim (Compl. ¶¶ 21-29). The guidelines are directly relevant to Plaintiff's claim, as they dispel any notion that Google deceives the public about its willingness to remove websites from search result that it determines are engaged in manipulation schemes. The guidelines thus "eliminated any possibility that a reasonable [consumer] would be misled" (*Zlotnick*, 480 F.3d at 1287), and they should be considered here.[5]

But even without regard to the Webmaster Guidelines, Google's other statements about its removal policies are not remotely deceptive. Plaintiff offers no response to Google's showing that those statements are entirely truthful and accurate. *Compare* Opp. 18 *with* Mot. 17-18. That is not surprising—no one could reasonably conclude from what Google says on its website that

---

[5] Plaintiff's unsupported assertion that Google must show that "the public actually reads the Guidelines" (Opp. 17) misunderstands the work the guidelines do in this case. Plaintiff's deception claim is based on the allegation that Google tells the public that it will not remove material from its search results except in "very limited circumstances" unrelated to search engine manipulation. Compl. ¶ 21. The Webmaster Guidelines confirm that Plaintiff's assertion is false. Whether e-ventures actually read the guidelines is beside the point. The fact that they are openly published on Google's website means that no reasonable person would be misled. Nothing more is needed to defeat Plaintiff's claim.

the company will not remove material for search results that it believes may mislead its users and undermine the integrity of its service.

As for unfairness, Plaintiff again relies improperly on its unpleaded allegations about its advertisements. Opp. 17-18. But even if these new claims were before the Court—and even if Plaintiff could somehow evade the choice-of-law provision in the AdWords agreement—an unfairness claim requires more than a conclusory allegation that Google's conduct was "anti-competitive." Plaintiff must show that it suffered "substantial" injury that was "not be outweighed by any countervailing benefits to consumers." *Porshe Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014). The opposition brief does not even try to make that showing, nor does it offer any meaningful response to Google's arguments (Mot. 20-21).

**Defamation.** Despite what Plaintiffs says (Opp. 19), there is nothing "contradictory" about search results being both protected speech and not false statements. Google's results are editorial opinions about the relative quality of websites. That is why they are covered by the First Amendment—and why they cannot give rise to a defamation claim. Plaintiff counters that whether its "websites *did* employ certain tactics or contain certain content" is a statement of fact. Opp. 19. That misses the point. As a matter of law, a search engine's judgment about how to populate its results does "not contain provably false connotations." *Search King*, 2003 U.S. Dist. LEXIS 27193 at *11-12. In removing e-ventures' websites, Google neither stated nor implied any *facts* about those sites. Google merely offered its protected *opinion* about the sites' relative value in response to users' search queries. *Id.* There can be no defamation arising from such an opinion. *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 717 (11th Cir. 1985) ("Opinions are protected from defamation actions by the first amendment."); *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008) ("defamation by implication claims must conform to the First Amendment principles of general defamation law").[6]

---

[6] Plaintiff also cannot dispute that Google made no public statement about e-ventures, as required for any defamation claim. Mot. 21-22. Pointing to the comments made by a single blogger, Plaintiff

Finally, Plaintiff can point to nothing in the complaint alleging that Google acted with knowledge or negligence that any statements it might have made were false. Instead, Plaintiff again tries to rely on the Google's declaration to suggest that Google did not review all the websites before removing them. Opp. 20. But that simply is not what the declaration says. Falls Decl. ¶ 39. If the Court were to consider this evidence, it would scuttle any defamation claim by confirming that Google acted with care in taking action against e-ventures' sites. *Id.* ¶¶ 29-40.

**Tortious Interference.** Finally, Plaintiff offers only token responses in support of its tortious interference claim. Florida's "single action rule" most certainly is not limited to cases arising from just one publication. Instead, the rule prevents tort plaintiffs from proceeding "on multiple *claims* for the same challenged defamatory actions"—regardless of the number of publications involved. *Kamau v. Slate*, 2012 U.S. Dist. LEXIS 158213, at *23 (N.D. Fla. Oct. 1, 2012) (emphasis added). That is exactly what Plaintiff does here. Its effort to recast its failed defamation claim as a claim for tortious interference is impermissible. Nor does Plaintiff show that Google acted with the requisite knowledge and intent. The allegations Plaintiff references (Compl. ¶¶ 38-41) say merely that e-ventures communicated with Google *after* its websites were removed. Nothing in the complaint suggests that Google was aware of e-ventures' contractual or business relationships when it delisted its sites—much less that it "manifested a specific intent to interfere" with those relationships. *Hodge v. Orlando Utils. Comm'n*, 2011 U.S. Dist. LEXIS 7621, at *57 (M.D. Fla. Jan. 26, 2011).

\* \* \*

For these reasons, as well as those in Google's motion to dismiss, Plaintiff's claims should be dismissed with prejudice.

---

argues that Google's actions sent an implicit message to the public. Opp. 19. But there is no allegation that Google actually communicated with that blogger, and without a publication, Google cannot be held responsible for what a third-party thought or said. *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (explaining that a "defamatory statement does not become actionable … until it is published or communicated to a third person").

Dated:  January 26, 2015

D AVID H. KRAMER (admitted *pro hac vice*)
Colleen Bal (admitted *pro hac vice* )
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
dkramer@wsgr.com
cbal@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY  10019
(212) 497-7700
bwillen@wsgr.com

Respectfully submitted,

s/NATHAN M. BERMAN
NATHAN M. BERMAN
FLA. BAR NO. 0329230
ZUCKERMAN SPAEDER LLP
101 EAST KENNEDY BLVD.
SUITE 1200
TAMPA, FL 33602
TEL: (813) 221-1010
FAX: (813) 223-7961
NBERMAN@ZUCKERMAN.COM

*Counsel for Google Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2015, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.

s/ Nathan Berman
Nathan Berman