**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| e-ventures Worldwide, LLC, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>Google Inc., )<br>)<br>  Defendant. )<br>)<br>)<br>) | Civil Action No. 2:14-cv-00646-JES-CM |

**GOOGLE'S MOTION TO TRANSFER
AND SUPPORTING MEMORANDUM OF LAW**

Defendant Google Inc. ("Google") hereby moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Google submits the following memorandum of law in support of its motion.[1]

**INTRODUCTION**

In its First Amended Complaint ("FAC"), Plaintiff e-ventures Worldwide, LLC ("e-ventures") for the first time asserts claims arising from the alleged removal of e-ventures' advertisements from Google's search engine. Those ads were part of Google's "AdWords" program. In order to use AdWords, and thereby to have ads for its websites appear on the same page as Google's ordinary ("natural") search results, Plaintiff had to enter into a contact with Google that governs the AdWords program. This agreement expressly requires the parties to litigate all disputes relating to the AdWords program in California and under California law. The forum-selection clause covers the claims that e-ventures now asserts regarding the removal of its

---

[1] In the alternative, Google submits that the Amended Complaint should be dismissed without further leave to amend, for the reasons set forth in Google's Motion to Dismiss Plaintiff's Amended Complaint, which is being filed concurrently with this motion.

4936038.1

advertisements. Because Plaintiff has flouted the parties' agreement by pursuing those claims in this Court, and because there are no "extraordinary circumstances unrelated to the convenience of the parties" (*Atl. Marin Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 134 S. Ct. 568, 581 (2013)), this case should be transferred to the Northern District of California for all further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Google, e-ventures, and The AdWords Agreement

Google is headquartered in Mountain View, California. FAC ¶ 3; Declaration of Jolanta Szczerba ("Szczerba Decl.") ¶ 2. Among its various products and services, Google operates an Internet search engine that returns lists of search results in response to user's search queries. FAC ¶ 11. Google's standard (or "natural") search results are ranked based on algorithms that Google uses to deliver the most relevant and useful information to its users. Szczerba Decl. ¶ 4. Google also operates an advertising program called "AdWords," which allows advertisers to display advertisements (in the form of "sponsored links" or "click ads") alongside Google's natural search results in response to users' search queries. FAC ¶ 12-13; Szczerba Decl. ¶ 3. All paid listings that appear on Google's search engine are there as a result of the AdWords program. *Id.*

Participation in the AdWords program requires the advertiser to accept Google's AdWords Terms and Conditions agreement (the "AdWords Agreement"). Szczerba Decl. ¶ 5 & Ex. A. This Agreement is a binding contract between Google and the participating advertiser. *Id.* No advertiser can use the AdWords program or have its advertisements appear on Google's search engine without first accepting the AdWords Agreement. *Id.* ¶ 7. The Agreement sets the terms for the relationship between Google and the advertiser. *Id.* ¶ 8. Among other things, the Agreement includes a mandatory forum-selection and choice-of-law provision that

unambiguously requires "all claims arising out of or relating to" the AdWords program to be brought in California and governed by California law:

> ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA[.]

*Id.* ¶ 9 & Ex. A (§ 12).

As the Amended Complaint makes clear, e-ventures participates in Google's AdWords program. FAC ¶¶ 25, 74; Szczerba Decl. ¶ 13. In order to become an AdWords advertiser, and have its ads appear alongside Google's search results, e-ventures would have had to create a Google AdWords account. Szczerba Decl. ¶¶ 5, 7, 13. As part of this process, the individual(s) creating the AdWords account would have been instructed to "carefully read" the AdWords Agreement. *Id.* ¶ 6. Google presents the full text of the agreement—including the forum-selection and choice-of-law provision—to the advertiser. *Id.* ¶¶ 5-6. In order to continue with the process and create the account, the advertiser must affirmatively click a box stating "Yes, I agree to the above terms and conditions." *Id.* ¶ 6. At any point, e-ventures could have declined to agree to these terms and elected not to create an AdWords account. *Id.* ¶¶ 6, 13. But e-ventures accepted the AdWords Agreement and voluntarily participated in the AdWords program. *Id.* ¶¶ 13-14. Since creating its account, Plaintiff has continued to maintain an AdWords relationship with Google governed by the terms of that contract. FAC ¶ 74 ("e-ventures has purchased and continues to purchase Google's services."); Szczerba Decl. ¶ 13.

### B. e-ventures' Claims Against Google

e-ventures filed this lawsuit against Google on November 4, 2014. Dkt. 1. Plaintiff's original complaint asserted claims arising from the removal of e-ventures' websites from Google's natural (unpaid) search listings. Google moved to dismiss the original complaint under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dkt. 36.[2] Without reaching the merits of Google's legal arguments, the Court dismissed Plaintiff's original complaint on April 17, 2015 because it contained impermissible "shotgun" allegations. Dkt. 52. Plaintiff was given 14 days to amend its complaint to cure that problem. *Id.*

The Amended Complaint, which was filed on May 1, 2015 (Dkt. 53), expands Plaintiff's original allegations to cover the alleged removal of what e-ventures refers to as its "paid" search listings, which are advertisements that appear on search results pages as part of Google's AdWords program. FAC ¶ 26 ("e-ventures['] websites were removed by Google from both its paid and unpaid search listings"); ¶ 27 ("e-ventures' actual corporate websites were absent from Google's paid and unpaid search listings"); Szczerba Decl. ¶ 3. Plaintiff now asserts four causes of action against Google: one new claim under the federal Lanham Act and three claims under Florida law (violation of the Florida Deceptive and Unfair Trade Practices Act, defamation, and tortious interference). These claims intertwine Plaintiff's allegations regarding the removal of both e-ventures' paid search advertisements and its unpaid search results. Concurrently with this motion to transfer, Google has renewed its motion to dismiss, which explains that Plaintiff's new allegations still fail to state a claim under state or federal law, and that Plaintiff's claims are barred by Section 230(c)(2) of the Communications Decency Act, 47 U.S.C. § 230(c)(2), and by the First Amendment. But, as discussed below, these are issues that the parties have agreed to litigate in California and under California law.

**ARGUMENT**

---

[2] In connection with its original motion to dismiss, in response to e-ventures' efforts to expand the case to address the removal of its search advertisements, Google explained to the Court that if Plaintiff were allowed to amend its complaint to add new allegations regarding the AdWords program, the forum-selection clause in the AdWords Agreement would apply and require the case to be transferred to California. *See* Dkt. 46, at 2; Dkt. 48, at 2-3.

I.   **The AdWords Agreement Requires That Plaintiff's Claims Regarding The Removal of Paid Search Listings Be Transferred To California**

  A.   <u>Motions To Transfer Based on A Forum-Selection Clause Like The One In The AdWords Agreement Must Be Granted In All But The Most Unusual Cases</u>

A district court may transfer a civil action to another district where the case could have been brought "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see generally Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). As the Supreme Court recently held, however, where a transfer motion is based on a forum-selection clause, certain "adjustments" to the standard §1404(a) analysis are "required." *Atl. Marine*, 134 S. Ct. at 581; *see also Retterath v. Homeland Energy Solutions, LLC*, 2014 U.S. Dist. LEXIS 57259, at *23-34 (S.D. Fla. Feb. 20, 2014) ("In cases based on a contract containing a mandatory forum selection clause … the analysis is more streamlined."). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied." *Atl. Marine*, 134 S. Ct. at 581.

In particular, the Supreme Court explained that the "presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways" (*id.* at 574):

- "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581.

- "Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582.

- "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

The upshot of these adjustments is that when a forum-selection clause is in play, "a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*; *e.g.*, *Retterath*, 2014 U.S. Dist. LEXIS 57259, at \*23-34 (applying *Atlantic Marine* to enforce a forum-selection clause).

      B.     <u>The Forum-Selection Clause In The AdWords Agreement Is Valid And Applies To The Claims Plaintiff Asserts In The Amended Complaint</u>

Google and e-ventures have agreed to litigate all claims "arising out of or relating to" the AdWords program "exclusively" in the federal or state courts in the California. Szczerba Decl. ¶ 9 & Ex. A (§12). This forum-selection clause is not limited to contract claims; it is to be construed broadly and encompasses "tort and extra-contractual claims" as well. *Pods, Inc. v. Paysource, Inc.*, 2006 U.S. Dist. LEXIS 31838, at \*4 (M.D. Fla. May 18, 2006) ("In this circuit, forum selection clauses are broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract and to promote enforcement of those clauses consistent with the parties' intent."); *Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004) ("It is clear that a contractual forum selection clause may apply to claims sounding in tort as well as those sounding in contract."). Insofar as they relate to the removal of advertisements from Google search results, Plaintiff's claims are plainly subject to the forum-selection provision in the AdWords Agreement. e-ventures' search ads were, by definition, part of the AdWords program (Szczerba Decl. ¶ 3), and any claims alleging that Google improperly removed them necessarily arise out of or relate to that program.

The forum-selection clause, moreover, is mandatory. It "dictates an exclusive forum for litigation under the contract." *Global Satellite Comm'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F. 3d 1249, 1262 n.24 (11th Cir. 1999)). The provision in the AdWords Agreement contains unequivocal language making clear that

claims between the parties must be litigated in California. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 245-46 (E.D. Pa. 2007) (holding that the forum-selection clause in the Google AdWords Agreement is mandatory); *Person v. Google Inc.,* 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006) (same).

Finally, there is no question that the provision is valid and binding upon the parties. *Cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (forum-selection clauses are prima facie enforceable). In similar cases brought by advertisers, courts around the country have consistently found Google's AdWords agreement—including the forum-selection clause—to be enforceable. *See, e.g.*, *TradeComet.com, LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010) (dismissing case based on forum-selection clause), *aff'd* 435 Fed. Appx. 31 (2d Cir. 2011); *Feldman*, 513 F. Supp. 2d at 248-49 (granting Google's motion to transfer case to the Northern District of California); *Person*, 456 F. Supp. 2d at 498 (same). In *Feldman,* for example, the court explained, after a detailed analysis, that the AdWords agreement is a valid contract (513 F. Supp. 2d at 235-36), that the plaintiff had adequate notice of the forum-section clause (*id.* at 236-38), that the agreement is enforceable despite the lack of a definite price term (*id.* at 238-39), and that the agreement was neither procedurally nor substantively unconscionable (*id.* at 239-43). With respect to the forum-selection clause in particular, the court held that the clause was "valid and reasonable" because it was not the result of fraud or overreaching, did not violate a strong public policy, and its enforcement would not deprive the plaintiff of its day in court. *Id.* at 246-48 (explaining that there was "no evidence of bad faith by" Google, that "Plaintiff had notice of the forum selection clause and retained the option of rejecting the contract with impunity," and that "it would be consistent with the public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement"). The court in *Person* reached the same conclusion, upholding the AdWords forum-selection clause because it was not the product of fraud, was accompanied by adequate notice, was not unfair, and did not violate public policy.

*Person*, 456 F. Supp. 2d at 494-97; *see also TradeComet.com*, 693 F. Supp. 2d at 377-81 (holding that AdWords forum-selection clause had been reasonably communicated to the plaintiff and that its enforcement was neither unreasonable nor unjust).

e-ventures is bound by the AdWords Agreement, and that agreement requires it to litigate any claims related to its search advertisements listings in California. Accordingly, this case must be transferred to the parties' designated forum in the Northern District of California absent some "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 134 S. Ct. at 575. No such extraordinary circumstances are present here.

  C. <u>The Court Must Give "Controlling Weight" To The Parties' Agreement To Litigate This Dispute In California</u>

The Supreme Court has explained why a district court confronted with motions under §1404(a) must almost always enforce a valid forum-selection clause:

> The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."

*Atl. Marine*, 134 S. Ct. at 581 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

As the party defying the forum-selection clause here, Plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582; *see also In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (same). e-ventures has no hope of carrying that burden. As for the private-interest factors (such as the convenience of the parties and the location of witnesses and evidence), the Court's inquiry begins and ends with the parties' agreement. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their

witnesses, or for their pursuit of the litigation. *A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.*" *Atl. Marine*, 134 S. Ct. at 581 (emphasis added). By agreeing to litigate disputes related to the AdWords program in California, e-ventures gave up any argument that California is not a convenient forum for those claims. *Id.*

That leaves only the public-interest factors, which "will rarely defeat a transfer motion." *Id.* at 574. They certainly do not do so here. Indeed, in this case, the public factors—the forum's familiarity with governing law, local interests, court congestion and efficiency, and the interests of justice (*see Atl. Marine*, 134 S. Ct. at 581 n.6)—all weigh strongly in favor of transfer. The Northern District of California can certainly adjudicate this dispute fairly and efficiently. That court has a significant connection to the events that gave rise to this suit. After all, it is where Google is based and where most of the events underlying the dispute took place (Szczerba Decl. ¶ 2). *Accord Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1278 (S.D. Fla. 2011) (finding that "due to the extent of [movant] Microsoft's presence in the Western District of Washington, the local interest in this case would be higher there than in this District."); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("the [destination venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district").[3]

Moreover, by virtue of the choice-of-law provision in the AdWords Agreement, California law will apply (Szczerba Decl. ¶ 9 & Ex. A (§12)), and Northern District of California courts are naturally more familiar with those principles. *E.g.*, *Feldman*, 513 F. Supp. 2d at 247 ("a California forum would be more appropriate because California law applies to disputes under

---

[3] Even without regard to the forum-selection clause, therefore, the Northern District of California would be an appropriate venue for this action. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in the district where defendant resides); 28 U.S.C. § 1391(b)(2) (venue is proper in the district where a substantial part of the underlying conduct occurred).

the Agreement"); *cf. Atl. Marine*, 134 S. Ct. at 583 ("The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right.").[4] And public policy favors the enforcement of the parties' agreement, as doing so "furthers vital interests of the justice system." *Pods, Inc.*, 2006 U.S. Dist. LEXIS 31838, at *11 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring) ("Courts should announce and encourage rules that support private parties who negotiate such clauses.")). Simply put, therefore, this case "does not present the type of 'exceptional' situation in which judicial enforcement of a contractual choice of forum clause would be improper." *In re Ricoh Corp.*, 870 F.2d at 574.

Finally, while Plaintiff still has allegations regarding the removal of its websites from Google's natural search listings, the whole case should be transferred. The allegations related to natural search results are inseparable from those regarding advertisements subject to the AdWords Agreement (*e.g.*, FAC ¶¶ 25-27), and e-ventures cannot avoid the forum designated by that Agreement by artful pleading. *Pods*, 2006 U.S. Dist. LEXIS 31838, at *7 n.2 ("if forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims") (quotation marks and citation omitted). Courts have repeatedly held that even where a forum-selection clause may not cover all of a plaintiff's claims, the non-covered claims should be transferred along with the covered ones. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) ("We agree with those courts which have held that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain."); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1308 (M.D. Ga. 2003) ("[T]o transfer Plaintiffs' breach of implied warranty of merchantability claim but not Plaintiffs' claims

---

[4] It is well settled that any interest that Florida residents might have in having Florida law apply "are not sufficient to overcome the forum selection clause." *Pods, Inc.*, 2006 U.S. Dist. LEXIS 31838, at *12 n.5 (citing *In re Ricoh Corp.*, 870 F.2d at 573-74)).

for negligence, negligent misrepresentation and fraudulent concealment would neither promote justice nor would it be an efficient use of resources."). That is the only result that makes sense here. The Northern District of California is a proper venue for this case even without regard to the forum-selection clause (*supra* n. 3), and it would disserve both the parties and the courts to divide this case, with different parts proceeding in different places. That would be wildly inefficient, and it would be contrary to both the "convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a).

## CONCLUSION

For these reasons, Google respectfully asks the Court to enforce the parties' forum-selection agreement and transfer this case to the Northern District of California.

Dated:  June 5, 2015

DAVID H. KRAMER (admitted *pro hac vice*)
COLLEEN BAL (admitted *pro hac vice* )
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
dkramer@wsgr.com
cbal@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY  10019
bwillen@wsgr.com

Respectfully submitted,

s/ *Nathan M. Berman*
NATHAN M. BERMAN
Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd.
Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
nberman@zuckerman.com

COUNSEL FOR GOOGLE INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2015, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.

/s/ Nathan M. Berman
Nathan M. Berman

4936038.1