# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

### FORT MYERS DIVISION

|  |  |  |
|---|---|---|
| e-ventures Worldwide, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:14-cv-00646-JES-CM |
| | ) | |
| Google Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## GOOGLE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

BRIAN M. WILLEN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 497-7700

NATHAN BERMAN, Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd., Suite 1200
Tampa, FL 33602
(813) 221-1010

*Counsel for Google Inc.*

Google submits this reply brief in further support of its motion to dismiss Plaintiff's First Amended Complaint ("FAC"). In removing e-ventures' websites from search results, Google sought to protect its search engine from material it considered objectionable and expressed a constitutionally protected opinion about what information would be most useful and relevant for its users. Google's actions fall squarely within the CDA and the First Amendment. Plaintiff's opposition brief ("Opp.") offers no basis for evading those bedrock protections or for overcoming the FAC's failure to state a viable claim under federal or Florida law.

## I.   PLAINTIFF INCORPORATES GOOGLE'S FACTUAL DECLARATION

While most of the opposition brief's "Facts" section consists of tendentious exaggeration of the allegations in the FAC (Opp. 3-7), one point does merit response.[1] Plaintiff repeatedly refers to a declaration (the Falls Declaration) that Google submitted earlier in this case, in response to Plaintiff's preliminary injunction motion. Opp. 3, 8, 13, 18. That declaration explained in detail Google's guidelines for removing websites that it concludes are trying to manipulate search results and described the circumstances that led Google to apply those guidelines to e-ventures. Dkt. 31. While the opposition brief invokes the Falls Declaration in multiple places, it consistently distorts what the document actually says. For example:

- The Falls Declaration does not say that Google did not review e-ventures' websites prior to removing them or that Google acted against e-ventures' entire network simply for reasons of "efficiency." Opp. 3, 18. To the contrary, the declaration describes Google's comprehensive review of e-ventures' sites and its pattern of misconduct, which ultimately led Google to block the whole network to prevent e-ventures from migrating its schemes to new sites (as it had done previously). Falls Decl. ¶¶ 29-36, 39.

---

[1] Plaintiff begins its opposition by asserting that Google "does not dispute" many of the allegations offered in the FAC. Opp. 1. That is hardly surprising. This is a motion to dismiss, so any well pleaded allegations in the complaint must be accepted. But that certainly does not mean that Plaintiff's allegations are actually true. Nor does it mean that Plaintiff can rely on implausible factual allegations or unsupported legal conclusions in trying to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the reasons discussed below and in Google's opening brief, applying the established standards of Fed. R. Civ. P. 8 and 12(b)(6), all of Plaintiff's claims fail as a matter of law.

- The declaration does not say that Google acted "punitively" in removing Plaintiff's sites. Opp. 3. It instead explains that Google acted to protect its users and legitimate websites from e-ventures' deceptions and to deter such conduct. Falls Decl. ¶¶ 5-7, 39-40.

While Google's motion can be granted without regard to the Falls Declaration, Plaintiff cannot misleadingly rely on snippets of that declaration while asking the Court to ignore the facts it actually recounts. If Plaintiff wants the declaration to be considered, as it clearly does (*see also* FAC ¶¶ 58-60), it must be considered accurately and fully. That would only confirm that Google acted in good faith, consistent with its published guidelines, and that Plaintiff has no viable claim.

## II.    PLAINTIFF CANNOT EVADE GOOGLE'S CDA IMMUNITY

Google's opening brief explained that the removal of Plaintiff's websites is protected by Section 230(c)(2) of the CDA—as other courts considering similar allegations have found. Dkt. 58, at 7-10. Plaintiff responds with two arguments, neither of which has merit.

*First*, Plaintiff claims that its barebones allegations about Google's motivations create a factual issue about whether Google acted in good faith. Opp. 8. In making this argument, Plaintiff ignores the cases cited in Google's motion that dismissed similarly unsupported claims of bad faith. *See e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008); *Donato v. Moldow*, 865 A.2d 711, 727 (N.J. Super. Ct. 2005). Instead, Plaintiff relies on a single, unpublished case. *Smith v. Trusted Universal Stds. in Elec. Transactions, Inc.*, 2010 U.S. Dist. LEXIS 43360 at *21 (D.N.J. May 4, 2010). But that ruling is no help to Plaintiff. The court in *Smith* went out of its way to "giv[e] the pro se Plaintiff the benefit of the doubt" and it "[c]onstru[ed] the Complaint broadly" with that in mind. *Id.* at *20. Beyond that, the court's ruling was based on the plaintiff's allegation that the defendant specifically told him that he would not have to worry about his material being blocked if he subscribed to a higher and more expensive level of service. *Id.* at *20-21. There is nothing remotely comparable to that allegation here. Plaintiff's effort to conjure up bad faith (Opp. 8) is misguided:

- As discussed above, Plaintiff's assertion that Google delisted e-ventures' websites "without even looking at them" is belied by the declaration that Plaintiff cites for that proposition.

- Google clearly explains to the public that it takes action with respect to website operators that it determines are violating its anti-manipulation guidelines. Dkt. 58, at 4-5, 18-19.

- Even if Google acted in part based on the concerns raised by an "anonymous tipster," that would not suggest bad faith; to the contrary, it would confirm that Google's concerns about e-ventures' websites were shared by others.

- Nothing in the CDA requires a service provider to give advance notice of a removal or offer an opportunity for after-the-fact redress. *See e360Insight*, 546 F. Supp. 2d at 609. In any event, Plaintiff admits that Google notified e-ventures about the removals the day they happened and gave it a chance to have its websites reinstated (FAC ¶¶ 22, 36)—a process that Plaintiff has used successfully to get many of its sites reinstated (*id.* ¶ 49; *cf.* Falls Decl. ¶¶ 28-46).

In short, none of Plaintiff's allegations suggests, much less plausibly, that Google did not act based on a subjective belief that e-ventures' websites were objectionable.[2]

*Second*, contrary to what Plaintiff claims (Opp. 9), search engine spam fits readily into section 230(c)(2)'s "otherwise objectionable" category. The whole purpose of that phrase is to sweep in material than a service provider might deem objectionable for reasons *other than* those covered by the preceding adjectives. Websites that seek to manipulate a search engine's results to make them less useful for its users are a perfect example. *See* Dkt. 58-3, at 12 (explaining that manipulation of search results can confuse users into visiting websites with irrelevant or offensive material). Plaintiff's effort to artificially narrow 230(c)(2) is belied by the only case it cites. *Smith* held that the CDA's "goals are served where an entity subjectively deems spam 'otherwise objectionable' and chooses to block it." 2010 U.S. Dist. LEXIS 43360, at *19. The court rejected "Plaintiff's argument that the blocked material must be 'obscene, lewd, filthy, excessively violent, or harassing,'" explaining that "Congress included the phrase 'or otherwise objectionable' in its list of restrictable materials, and nothing about the context before or after that phrase limits it to just patently offensive items." *Id.* at *19-20. Plaintiff further ignores the statute's text in asserting that its websites "were not objectionable." Opp. 9. As we have explained (Dkt. 58, at 8), the question posed by section 230(c)(2) is whether Google *subjectively considered* those sites objectionable. Nothing in the FAC suggests that it did not.[3]

---

[2] Plaintiff chides Google for not coming forward with a legitimate basis for its actions. Opp. 8-9. Not only does this ignore how the CDA is supposed to be applied on a motion to dismiss (*see Donato*, 865 A.2d at 727), it overlooks the fact that Google explained the basis for its actions both at the time of the removal and in the Falls Declaration.

[3] Plaintiff's unsupported assertion that "Section 230 immunity does not exist for a FDUTPA claim" (Opp. 9) is plainly wrong. It is well settled that § 230(c)(2) "insulates service providers from

## III.   PLAINTIFF CANNOT EVADE THE FIRST AMENDMENT

Plaintiff also cannot get around the unbroken line of cases holding that the First Amendment protects Google's opinions about what material to include in its search results. Dkt. 58, at 10-13.

Plaintiff argues that Google's decision to remove e-ventures' websites was not an "editorial" judgment. Opp. 10. This assertion is premised largely on a distortion of the Falls Declaration, which Plaintiff reads as saying that Google did not review all of e-ventures' websites before blocking them. *Id.* As discussed, however, the declaration explains that Google carefully reviewed e-ventures' sites and decided to act against the entire network based on the wide ranging nature of the misconduct and concerns that e-ventures would migrate its objectionable content to other sites it controlled. Falls Decl. ¶¶ 39-45. Even putting that aside, however, nothing Plaintiff says suggests that Google's actions were not editorial. Plaintiff suggests that if Google was really concerned about relevance, it would have ranked e-ventures' sites lower in search results rather than removing them altogether. That makes no sense. Like a demotion, a removal is an expression of a search engine's editorial opinion about the value of a given website. A newspaper just as much makes an editorial judgment when it declines to run an article as when it buries it on the back page. Unsurprisingly, therefore, both *Langdon v. Google*, 474 F. Supp. 2d 622 (D. Del. 2007), and *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014), held that exclusion decisions are protected by the First Amendment.[4] Similarly, the fact that Google acted against e-ventures' entire network does not make Google's actions less worthy of constitutional protection. Excluding a company's websites from search results

---

claims premised on the taking down of a customer's posting such as breach of contract *or unfair business practices.*" *Batzel v. Smith*, 333 F.3d 1018, 1030 n.14 (9th Cir. 2003) (emphasis added); *see, e.g.*, *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117-1118 (W.D. Wash. 2004). While section 230(e)(3) allows states to enforce laws that are *consistent* with the immunities provided by the CDA, Plaintiff's attempt to hold Google liable "based on [its] effort[ ] to screen content" is precisely what the CDA does not allow. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 n.3 (11th Cir. 2006).

[4] Plaintiff's assertion that the websites at issue in *Langdon* were not delisted is incorrect. The Plaintiff in *Langdon* "allege[d] that Google removed his NCJustice website from its search results." 474 F. Supp. 2d at 627. The court held that the removal of both that website and Plaintiff's advertisements was protected speech. *Id.* at 629-630.

because of a judgment that it is engaged in a wide-ranging manipulation scheme is no less a content-based editorial decision than removing only particular websites operated by that company.[5]

Plaintiff's efforts to distinguish the prior cases on this issue fail. Opp. 11-12. *Zhang* was not limited to a search engine's politically motivated removal of certain types of content. To the contrary, the court made clear that "the First Amendment's protections apply whether or not a speaker articulates, or even has, a coherent or precise message." *Zhang*, 10 F. Supp. 3d at 437. Nor does the fact that the removals here were manual make any difference. *Zhang* explained that manual actions would have an even more obvious case for constitutional protection. *Id.* at 438-439. That Google is larger than Baidu is equally irrelevant, as the court expressly noted that search engines "lack the physical power to silence anyone's voices, no matter what their alleged market shares may be." *Id.* at 441. It similarly does not matter that *Search King* involved only a claim for tortious interference—especially given that e-ventures makes that same claim here. As Plaintiff admits, *Search King* found that Google's search results are protected opinions because "there is no conceivable way to prove that the relative significance assigned to a given web site is false." *Search King, Inc. v. Google Tech., Inc.*, 2003 U.S. Dist. LEXIS 27193 at *12 (W.D. Okla. May 27, 2003). That is true here as well, and it defeats Plaintiff's claims no matter what form they take.

Plaintiff also argues that this case differs from *Zhang* and *Search King* because it involves the removal of advertisements. Opp. 11, 14. This is an audacious argument in light of Plaintiff's effort—in response to Google's Motion to Transfer—to downplay, if not wholly abandon, the FAC's allegations about ads. *See* Dkt. 62 (e-ventures asserting that only one removed listings was an ad and seeking leave to "amend its complaint to remove any allegations related to that single paid listing"). Plaintiff cannot rely on its advertising-related allegations to try to save its claims from the First Amendment while simultaneously jettisoning those same allegations in an effort to avoid transfer.

---

[5] Plaintiff's suggestion that Google continued to accept payment to run listings for websites that had been blocked is contradicted by its own allegations that Google *removed* e-ventures' paid listings as part of the action it took against Plaintiff's network (FAC ¶ 26).

Plaintiff's commercial speech argument also fails on its own terms. Plaintiff ignores Google's extensive discussion of this issue, which explained that its decision to remove content from search results remains a protected opinion regardless whether the removed content is advertising. Dkt. 58, at 13-14 & n.5. Plaintiff's novel suggestion that *all* search results are somehow commercial speech because Google is a for-profit business is clearly wrong, as *Zhang* explained: "the fact that Baidu has a 'profit motive' does not deprive it of the right to free speech any more than the profit motives of the newspapers in *Tornillo* and *New York Times* did." 10 F. Supp. 3d at 443. Plaintiff similarly misses the point in arguing that any advertisements at issue were necessarily commercial speech. The issue here is not the nature of the speech communicated by the ads themselves, but rather the opinion reflected in Google's decision to remove them. Like a newspaper's editorial judgments regarding what ads it should publish (*Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135-36 (9th Cir. 1971)), Google's determinations in that regard are fully protected by the First Amendment.[6]

Finally, Plaintiff's reliance on *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951), is misplaced. Opp. 12-13. *Lorain Journal* was a Sherman Act case against a newspaper that refused to run ads from anyone who advertised with a competing radio station. Plaintiff does not allege anything remotely like that sort of sustained anti-competitive conduct (indeed, there is no antitrust claim here at all).[7] The other cases that Plaintiff cites (*id.* 13) are similarly inapposite. They say merely that a statute does not violate the First Amendment when it regulates purely commercial activity rather than speech. Here, however, what Plaintiff challenges is clearly speech: as court after court has held, a search engine's exclusion decision is speech that expresses a constitutionally protected opinion. *E.g.*, *Search King*, 2003 U.S. Dist. LEXIS 27193, at *11.

---

[6] Plaintiff ignores *Aldrich* except to cite an irrelevant state trial court decision (Opp. 13). *Hotjobs.com, Ltd. v. Digital City, Inc.*, 53 Va. Cir. 36 (2000), held that the First Amendment did not bar the court from ordering specific performance as a remedy for an advertising service's breach of its contract with an advertiser. That has no application here, where Plaintiff does not (and could not) allege breach of contract and where Google plainly *did* object to the content of e-venture's websites.

[7] The opposition brief's vague and unsubstantiated assertions of "anti-competitive behavior" on Google's part (Opp. 5 n.2) are improper, outside the FAC, and must be ignored.

## IV.    PLAINTIFF CANNOT AVOID ITS PLEADING FAILURES

Apart from the CDA and the First Amendment, Plaintiff's Opposition only confirms that the FAC fails to state a claim under the various statutes and causes of action it invokes.

**Lanham Act**. Despite failing to mention the relevant language of the statute, Plaintiff now asserts that its Lanham Act claim is for false advertising. Such a claim fails as a matter of law because, as explained in Google's opening brief (Dkt. 58, at 16-17), the FAC does not plausibly allege that Google made false statements "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Plaintiff responds that Google's "search results themselves made a commercial statement to the public." Opp. 19. This argument is doubly misguided. For one, it ignores the actual basis for Plaintiff's claim. As set out in the FAC, the statements underlying Plaintiff's claim are Google's removal policies, not its search results, (FAC ¶¶ 47, 66), and even Plaintiff cannot bring itself to argue that those policies are commercial advertisements.[8] In any event, Plaintiff does not explain how Google's search results are statements made "for the purpose of influencing consumers to buy defendant's goods or services." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012). Search results are not ads for Google's services; they are the very service that Google provides. Beyond failing to satisfy the "commercial advertising or promotion" requirement, Plaintiff does not even try to show that (a) any alleged false statement by Google about its removal policies would have been material to someone deciding whether to purchase Google's services, and (b) e-ventures' injuries were directly caused by someone relying on Google's alleged deception. Dkt. 58, at 17. Those pleading deficiencies are independently sufficient to reject any Lanham Act claim.

**FDUTPA**. Plaintiff's efforts to save its FDUTPA claim fare no better. The fact that a complaint's well-pleaded allegations are taken as true on a motion to dismiss (Opp. 15) does not

---

[8] Plaintiff quotes *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002), for the proposition that courts assessing Lanham Act claims should consider the place of an alleged false advertisement in a larger advertising campaign. Opp. 19. But here there is no larger advertising campaign to consider. In any event, the passage Plaintiff cites addressed whether the statements were deceptive. It said nothing about whether they were made in commercial advertising in the first place, an issue that was simply not discussed in that opinion.

relieve Plaintiff of the need to "state[ ] a plausible claim for relief," one that pleads more than boilerplate for all elements of the cause of action. *Iqbal*, 556 U.S. at 679. The FAC does not do so. As for the deception claim, e-ventures offers almost no response to Google's detailed explanation of why the statements at issue are not deceptive, especially in light of Google's clear explanations to the public of the very policies e-ventures says were concealed. Dkt. 58, at 18-20. Instead, Plaintiff argues that these issues cannot be resolved at the pleading stage, but that ignores the Eleventh Circuit's holding that where it can be determined from the pleadings that the defendant's statements "eliminated any possibility that a reasonable purchaser would be misled," a FDUPTA claim fails and must be dismissed. *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1287 (11th Cir. 2007). That is the situation here.[9] Moreover, Plaintiff offers nothing that can overcome the FAC's failure to allege the causation element of its deception claim (*see* Dkt. 58, at 20 n.9). That's not surprising: even if Google's statements about its guidelines for removing material from search results were somehow deceptive, it is totally implausible to assert that those statements themselves caused Plaintiff's injury.

Nor can e-ventures manufacture a viable unfairness claim. Plaintiff argues, without any concrete allegation of consumer or market harm, that Google acted in an anticompetitive manner. Opp. 16. But just as rhetoric not grounded in any plausible allegations of fact could not give rise to a viable antitrust claim in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), unsupported ranting about Google's supposed motivations does not plead "enough facts to state a claim to relief that is plausible on its face" or allow Plaintiff to push its "claims across the line from conceivable to plausible." *Id.* at 570. The same is true of FDUTPA's requirement that the plaintiff must have

---

[9] Plaintiff's suggestion that it is a "consumer" entitled to sue under FDUTPA based on the removal of unpaid search results is incorrect. As explained in Google's motion to dismiss the original complaint (Dkt. 36, at 14-15), most courts have held that the 2001 amendment, "while broadening the scope of FDUTPA, still applies only to consumers." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014). Plaintiff's reliance on the minority position should be rejected. Google's motion to transfer is totally irrelevant to this issue. While FDUTPA itself bars Plaintiff's claims regarding natural search results, it is the express agreement between the parties that bars Plaintiff from bringing a claim in this Court based on the removal of paid advertisements.

suffered "substantial" injury that is not "outweighed by any countervailing benefits to consumers." *Porshe Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014). There are obvious benefits to consumers that come from search engines taking steps to protect their results from manipulation (*see* Dkt. 58, at 21-22), and nothing Plaintiff alleges in the FAC or says in the Opposition overrides that.

**Defamation**. Contrary to what Plaintiff claims (Opp. 17), Google's argument about defamation is perfectly consistent with its First Amendment argument. Search results, including the decision whether to exclude certain information, reflect editorial opinions about the relative quality of websites. That is why they are protected by the First Amendment—and why they cannot give rise to a defamation claim. This is not trying to have it both ways; it is an application of settled law. *See Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985). Plaintiff responds that whether "e-ventures' websites *did* employ certain tactics or contain certain content, in violation of Google's published policies, is a question of fact." Opp. 17. Not so. It is well settled that a search engine's judgment about how to populate its results does "not contain provably false connotations." *Search King*, 2003 U.S. Dist. LEXIS 27193 at *11-12.[10] In removing e-ventures' websites, Google neither stated nor implied any *facts* about those sites. No defamation can arise from Google's expression of opinion. Plaintiff cannot get around that principle by invoking a theory of defamation by implication. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008) ("defamation by implication claims must conform to the First Amendment principles of general defamation law").[11]

---

[10] For the reasons discussed above, Plaintiff's effort to evade *Search King* (Opp. 17-18) fails. *Search King's* holding—that search results reflect protected opinions—applies equally to removal decisions as it does to ranking decisions. And both *Langdon* and *Zhang* squarely held that full First Amendment protection applies where search engines exclude material they deem unworthy. *See also Kinderstart.com, LLC v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22637, at *55-65 (N.D. Cal. Mar. 16, 2007) (dismissing defamation claim arising from exclusion of the plaintiff's website from Google's search results).

[11] Pointing to the comments made by a lone blogger, Plaintiff argues that Google's actions sent an implicit message to the public. Opp. 17. But the FAC makes no allegation that Google actually communicated with that blogger, and the statements of a third party cannot transform Google's protected opinions into false statements of fact.

Finally, Plaintiff concedes that it has not alleged malice, but again invoking the Falls Declaration, it half-heartedly suggests that Google was negligent because it supposedly did not review all of e-ventures' websites before removing them. Opp. 18. As explained above, that is not what the declaration says, and a plaintiff's claim of fault cannot be premised on such a clear distortion.

**Tortious Interference.** Finally, Plaintiff offers only token responses in support of its tortious interference claim. Opp. 18-19. Florida's "single action rule" is not limited to cases arising from just one publication. The rule prevents tort plaintiffs from proceeding "on multiple claims for the same challenged defamatory actions"—regardless of the number of publications involved. *Kamau v. Slate*, 2012 U.S. Dist. LEXIS 158213, at *23 (N.D. Fla. Oct. 1, 2012). That's exactly what Plaintiff is trying to do here. It alleges two causes of action arising from exactly the same actions, Google's removal of e-ventures' websites. *Compare* FAC ¶ 87, *with* ¶ 95. Plaintiff's effort to "renam[e] the cause of action and replead[ ] the same facts" (*Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)), is particularly objectionable given that the tortious interference claim confronts the same First Amendment problem that precludes the defamation claim. *Search King*, 2003 U.S. Dist. LEXIS 27193, at *12-13.

Nor can Plaintiff show that Google acted with the required knowledge and intent. While e-ventures belatedly says that third parties breached contracts with it (Opp. 18), that allegation does not appear in the FAC (*see* FAC ¶¶ 30, 97, 99). In any event, neither the complaint nor the Opposition offers any plausible allegation that Google knew about any specific agreement between e-ventures and a third party (much less the ones that were supposedly breached) or specifically intended through its removal to interfere with those agreements. The allegations Plaintiff references (*id.* ¶¶ 97-102) say only that Google may have visited some of e-ventures' websites (Plaintiff does not say which ones) and that e-ventures communicated with Google *after* its sites were removed. Those barebones assertions do not remotely support a tortious interference claim.

## CONCLUSION

For these reasons, and those in the opening brief, the FAC should be dismissed with prejudice.

-10-

Dated:  July 27, 2015

Respectfully submitted,

/s/ NATHAN BERMAN
NATHAN BERMAN, Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd., Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
nberman@zuckerman.com

BRIAN M. WILLEN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY  10019
bwillen@wsgr.com

*Counsel for Google Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2015, I electronically filed the foregoing with the Clerk of the

Court using the Court's CM/ECF system.

/s/ Nathan Berman
Nathan Berman

-11-