**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

**FORT MYERS DIVISION**

| | |
|---|---|
| e-ventures Worldwide, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>Google Inc.,<br><br>        Defendants. | Civil Action No. 2:14-cv-00646-JES-CM |

**GOOGLE'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL
AND SUPPORTING MEMORANDUM OF LAW**

BRIAN M. WILLEN (admitted *pro hac vice*)  
Wilson Sonsini Goodrich & Rosati  
1301 Avenue of the Americas, 40th Floor  
New York, NY 10019  
(212) 497-7700  

NATHAN BERMAN, Fla. Bar No. 0329230  
Zuckerman Spaeder LLP  
101 East Kennedy Blvd., Suite 1200  
Tampa, FL 33602  
(813) 221-1010  

*Counsel for Google Inc.*

**TABLE OF CONTENTS**

**Page**

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................2

ARGUMENT.....................................................................................................................................3

    A.    Whether Google's Removal of Plaintiff's Websites Communicated an Opinion Protected By The First Amendment Is A Controlling Question of Law.................................................................................................................................4

    B.    There is Substantial Ground for Difference of Opinion Regarding The Proper Resolution of The First Amendment Question In This Case .....................5

    C.    Resolution of the First Amendment Issue Would Materially Advance the Ultimate Termination of the Litigation ....................................................................10

CONCLUSION...............................................................................................................................11

Defendant Google Inc. ("Google") files this motion requesting that the Court certify its May 12, 2016 Order for appeal under 28 U.S.C. § 1292(b). Section 1292(b) allows for interlocutory review of "controlling question[s] of law as to which there is substantial ground for difference of opinion" where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." These standards are met here.

The Court's May 12 Order addressed a critical legal question and a controlling one in this case: whether Google's choice about what websites to include in its search results is protected by the First Amendment. Every prior decision had held that internet search engines offer editorial opinions immune from liability under the First Amendment. Here, however, the Court allowed plaintiff e-ventures Worldwide, LLC ("e-ventures") to overcome this vital constitutional protection, at least at the pleading stage, by characterizing Google as having made a false statement of fact and by drawing an artificial distinction between search rankings and search removals. Given that other courts have come to different conclusions in nearly identical circumstances, there are, at a minimum, substantial grounds for a difference of opinion about the Court's decision. And this issue is case-dispositive: applying the First Amendment would end this case, without the need for any further proceedings.

The Court's ruling, moreover, will have real practical consequences. It undermines the First Amendment protection that search engines (and other speakers) enjoy against claims seeking to hold them liable for their exercise of editorial judgment. No less than its decisions about how to rank search results, Google's decisions about what websites to include in its index reflect Google's opinions about what material is most relevant to users and consistent with its policies. Existing case law makes that clear. Plaintiffs should not be allowed to sidestep this result simply by alleging anticompetitive motives. Allowing this case to proceed in the face of these concerns has enmeshed Google in burdensome litigation that threatens to chill protected speech. Google respectfully submits that this issue merits immediate attention by the Eleventh Circuit.

**FACTUAL AND PROCEDURAL BACKGROUND**

At its heart, this case is an attempt by e-ventures to hold Google liable for its editorial decisions about what content to present to users of its search engine. Like other search engines, Google uses its own algorithms to determine what online material should be included in a given set of search results and in what order that content should be displayed. Dkt. 86 at 6. Google's search results thus reflect a fundamentally subjective opinion about what items are most useful and relevant in response to a given search query. *Id.* at 15. Google maintains search quality guidelines, which aim to protect users from online material that may be irrelevant, misleading, or not responsive to their queries. *Id.* at 4-5. If Google comes to believe that certain websites do not conform to those guidelines, it may in some circumstances choose to exclude those sites from appearing in search results. *Id.* This case arises from one such exclusionary action.

e-ventures operates a vast network of websites in connection with its business, which it alleges to be "online publishing and research." SAC ¶ 9. On September 18, 2014, after Google concluded that e-ventures was not in compliance with Google's search quality guidelines, Google exercised its editorial discretion by removing e-ventures' websites from its search index. Google did not make any public statement, in its search results or otherwise, explaining what it had done or why, though it informed e-ventures of the action privately so e-ventures could correct the issues that had caused its websites to be excluded.

e-ventures filed suit against Google on November 4, 2014 (Dkt. 1), asserting claims from the removal of its websites from Google's search listings. Plaintiff filed its Second Amended Complaint ("SAC") on November 2, 2015 (Dkt. 75). The SAC included claims under the federal Lanham Act (15 U.S.C. § 1125) and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), as well as claims for defamation and tortious interference under Florida law. Dkt. 75 at ¶¶ 63-103. Google moved to dismiss the SAC, arguing, among other things, that the First Amendment barred e-

ventures' attempt to hold Google liable for what were ultimately editorial opinions about what material should be included in its search results. Dkt. 78.

In its May 12, 2016 Order, the Court granted Google's motion in part and denied it in part. Dkt. 86. In regards to Google's First Amendment argument, the Court ruled that while Google's search *rankings* were protected by the First Amendment as opinions, e-ventures had alleged that by *removing* its websites, Google somehow communicated a factual statement that e-ventures had not followed Google's policies. *Id.* at 15-16. Based on plaintiff's allegations, the Court concluded, Google's removal decision was "speech [that] is capable of being proven true or false since one can determine whether e-ventures did in fact violate Google's policies." *Id.* at 16. In addition, the Court held that because e-ventures had alleged that Google acted out of anticompetitive motives, Google could not claim, at this stage of the case, that its removal decision qualified as an "editorial judgment" immune from liability under the First Amendment. *Id.* Google has moved for reconsideration of a separate aspect of the Court's Order (Dkt. 87); that motion is still pending, and will not be affected by this certification request.

## ARGUMENT

Section 1292(b) creates a mechanism for interlocutory appellate review of legal rulings. As the Eleventh Circuit has explained: "The essential requirements for any § 1292(b) appeal, which are set out in the statute itself, present us with three questions: (1) What is 'a controlling question of law'?; (2) what is a 'substantial ground for difference of opinion'?; and (3) what does it mean for an appeal to 'materially advance the ultimate termination of the litigation?'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004) (quoting 28 U.S.C. § 1292(b)).

*First*, a controlling question of law is "what might be called one of 'pure' law, matters the court of appeals can decide quickly and cleanly without having to study the record." *Id.* at 1258. "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order

would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

*Second*, a "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 n.2 (9th Cir. 2014) (quotation marks omitted). Where two courts have disagreed on the relevant issue, this criteria is clearly met, but actual disagreement is not required for certification. "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

*Third*, the material advancement requirement is satisfied where "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin,* 381 F.3d at 1259. Each of these criteria is met in this case.

      A.    **Whether Google's Removal of Plaintiff's Websites Communicated an Opinion Protected By The First Amendment Is A Controlling Question of Law**

As an initial matter, the application of the First Amendment to plaintiffs' claims in this case is a controlling legal question. The Court considered whether Google's exclusion of e-ventures' websites from search results communicated a statement of fact, rather than an opinion reflecting editorial judgments protected by the First Amendment. In addressing that issue, the Court drew a distinction between Google's choice in how to rank various websites in search results and its decision whether to include those sites at all. The former, the Court said, involved protected opinions; the latter, at least based on plaintiff's allegations, involved a factual statement that could be proven true or false. Dkt. 86. at 15-16.

The characterization of Google's speech as fact or opinion is purely an issue of law. *See Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 715 (11th Cir. 1985) ("Whether the challenged statement was one of fact or opinion is ... a question of law to be decided by the court."). So too is the question

whether the established First Amendment immunity for search result rankings applies to a search engine's decision to exclude certain material from its search results. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("inquiry into the protected status of speech is one of law, not fact"). These questions can be decided "without having to study the record" (*McFarlin*, 381 F.3d at 1257), based on existing case law. Indeed, in the prior cases addressing the application of the First Amendment to search engines, the courts have resolved these issues as a matter of law, based on the pleadings alone and without any factual examination. *See Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) (motion for judgment on the pleadings); *Langdon, Inc. v. Google*, 474 F. Supp. 2d 622 (D. Del. 2007) (motion to dismiss); *Search King, Inc. v. Google Tech., Inc.,* No. CIV-02-1457-M, 2003 U.S. Dist. LEXIS 27193, at *9-12 (W.D. Okla. May 27, 2003) (motion to dismiss).

Nor is there any doubt that these legal questions are "controlling." Although a controlling question of law is one that "disposes of a *substantial* part of the case, not necessarily the entire case," *Horowitch v. Diamond Aircraft Indus.*, No. 6:06-cv-1703-Orl-19KRS, 2007 U.S. Dist. LEXIS 73858, at *4 n.1 (M.D. Fla. Oct. 3, 2007), the constitutional issue here is case-dispositive. The Court understood that if the First Amendment applied here, Google would be immune from liability for all of plaintiff's claims. Dkt. 86 at 13-15 (observing that the "First Amendment can serve as a defense in state tort suits"). As such, a determination by the Eleventh Circuit that Google's exclusion of e-ventures' website reflected a constitutionally protected opinion would mean that this litigation is over. This is the paradigm of a controlling question of law. *See, e.g.*, *Williams v. Cruise Ships Catering & Serv. Int'l*, No. 03-60158-CIV, 2004 U.S. Dist. LEXIS 7586 (S.D. Fla. Mar. 31, 2004).

> **B.  There is Substantial Ground for Difference of Opinion Regarding The Proper Resolution of The First Amendment Question In This Case**

It is equally clear that there is a "substantial ground for difference of opinion" as to the First Amendment's application to Google. In allowing plaintiff's claim to survive, the Court considered two important issues. First, it accepted the characterization of the removal of e-ventures' websites as

being a statement of fact by Google capable of being proven true or false. Dkt. 86 at 15-17. Second, the Court allowed e-ventures to use an allegation of bad faith to plead around Google's argument that its actions reflected editorial judgments that are protected by the First Amendment. *Id.* at 16-17. Google respectfully submits that both of these conclusions are incorrect, but at a minimum, they certainly are ones with which reasonable jurists could disagree.

**Exclusion Decisions As Statements of Fact.** The Court's treatment of the line between statements of fact and statements of opinion is contrary to established law. The Court acceded to plaintiff's allegation that Google's statements were factual in nature. But that disregards the rule, discussed above, that "[w]hether the challenged statement was one of fact or opinion is likewise a question of law to be decided by the court." *Keller*, 778 F.2d at 715. Because this is an issue of law, it should not matter whether e-ventures alleged that Google made a factual statement rather than an opinion. The court must come to its own legal judgment regarding the "protected status of speech." *Connick*, 461 U.S. at 148 n.7. In *Keller*, for example, the plaintiffs' contention that the editorial cartoon at issue asserted false facts was not controlling. The Court looked at that issue for itself and determined, as a matter of law, that the cartoon constituted an opinion protected by the First Amendment. *Keller*, 778 F.2d at 715-18.

Beyond this threshold problem, the characterization of the speech at issue here as a factual statement is highly contestable. The Court's ruling was based on the premise that a search engine's decision to *exclude* websites from search results is materially different from its decision about how to *rank* various websites. The Court suggested that while the latter reflects a protected opinion, the former may be a fact capable of being proven false. Dkt. 86 at 14-15. This distinction is contrary to the decisions of two other courts that have squarely held that search engine exclusion decisions convey editorial opinions protected by the First Amendment.

In *Langdon v. Google*, the plaintiff specifically "allege[d] that Google removed his NCJustice website from its search results." 474 F. Supp. 2d at 627. And he asserted a legal theory very similar

-6-

to the one here: that in removing his websites, "Google fraudulently implied it was legally compelled to remove his website from its search results." *Id.* The court dismissed this claim, just as it dismissed the plaintiff's claims about how his sites were ranked. *Id.* at 629. The court explained that the First Amendment prohibits attempts to force publishers to print materials they disagree with or do not think are relevant. *Id.* As such, there was no meaningful distinction between efforts to compel Google to "'honestly' rank Plaintiff's websites" and to include material in its search results. *Id.* Both ran afoul of the First Amendment.

Similarly, in *Zhang v. Baidu*, the court concluded that the First Amendment protected a search engine's exclusion of websites that violated its policies. The case had nothing to do with search ranking; the sites at issue were categorically excluded from appearing in search results. 10 F. Supp. 3d at 435. The court held that the First Amendment applied to these "editorial judgments." *Id.* at 441. Granting the defendant's motion to dismiss, the court explained that, as a matter of law, "[t]o allow such a suit to proceed would plainly violate the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id.* at 440 (internal citations and quotation marks omitted).

As *Langdon* and *Zhang* make clear, established case law offers substantial grounds for difference of opinion with the ruling here. These decisions have rejected the idea that search engine removal decisions are any less worthy of constitutional protection than the ranking decisions that this Court found to be "pure opinions of the website's relevancy to a user's search query, incapable of being proven true or false." Dkt. 86 at 15. But even taken on its own, this distinction is problematic. The core principle "that search engine output results are protected by the First Amendment" (Dkt. 86 at 15) applies just as much to Google's determinations about what websites to exclude from search results as to the ranking of the websites that are included. There is no meaningful difference between those two things that makes one an opinion and other a fact. Just like ranking determinations, exclusion decisions are editorial judgments about what material is useful

-7-

and relevant. These judgments do not reflect a factual statement about the world: they reflect "opinions of the significance of particular web sites as they correspond to a search query." *Id.* at *11.

That Google makes exclusion decisions in reference to a set of policy guidelines does not make them into factual statements. After all, ranking decisions are informed by policy guidelines as well. The court in *Search King* noted that page ranks were described as "honest and objective." *Search King*, 2003 U.S. Dist. LEXIS 27193, at *9. But the court was emphatic that "statements as to the purported objectivity of the PageRank system cannot transform a subjective representation into an objectively verifiable fact." *Id.* at 11. The same is true here. Whether to include certain websites in search results is informed by the same editorial and policy considerations as ranking decisions. An exclusion decision represents Google's opinion that the sites are of such low quality that they are not worth including at all.

In short, this Court's determination that Google's search rankings are "pure opinions of the website's relevancy to a user's search query" (Dkt. 86 at 15) should have led it to conclude that the exclusion decisions at issue here are equally protected by the First Amendment. At the very least, it is likely that other jurists would come to that conclusion.

**Editorial Judgments and Allegations of Anticompetitive Motives.** Equally debatable is this Court's decision to allow e-ventures to overcome First Amendment protections for "editorial judgments" simply by alleging that Google had "anti-competitive motives." Dkt. 86 at 16. Other courts have held that plaintiffs cannot so readily evade the First Amendment. In *Search King*, the court granted Google's motion to dismiss even though the complaint alleged that "Google purposefully and maliciously decreased the PageRanks previously assigned to" plaintiff and others, and that it did so "because Google learned that PRAN was competing with Google and that it was profiting by selling advertising space on web sites ranked highly by Google's PageRank system." *Search King*, 2003 U.S. Dist. LEXIS 27193, at *4; *see also Langdon*, 474 F. Supp. 2d at 630 (applying First Amendment notwithstanding allegation that Google acted fraudulently); *Zhang*, 10 F. Supp. 3d

-8-

at 440 n.6 (plaintiffs' allegation that search engine "exercises editorial judgment in cooperation with and according to the policies and regulations of China makes no difference to the analysis").

These rulings reflect the reality that allowing conclusory allegations of bad faith to overcome First Amendment immunity creates an all-too-easy way to sidestep those protections at the pleading stage. This undermines the value of constitutional protection for speech, which can be chilled as much by having to endure the process of litigation as by ultimate liability. As the Eleventh Circuit has explained, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict that breathing space in exactly the manner the [First Amendment] was intended to prevent.").

So it is here. Allowing plaintiffs to subject editorial judgments to litigation based merely on allegations of anticompetitive motive threatens the robust public discourse at the heart of the First Amendment. Faced with the threat of lengthy lawsuits and burdensome discovery, many search engines would hesitate to exercise their judgment regarding websites that they considered problematic or irrelevant. That would undermine the utility of search engines and make it less likely that users will find valuable content in response to their queries. It would also spell trouble for publishers and editors in other contexts (including social networking services, user-generated content platforms, and media outlets) giving aggrieved litigants a handy way to attack editorial speech that they don't like. If a newspaper refused to run op-eds submitted by a writer that the editors believed was providing misleading information in violation of the paper's editorial standards, the First Amendment should protect that judgment even if the writer claimed that he was excluded for malicious or anti-competitive motives. *See, e.g.*, *The Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971). Reasonable jurists could conclude that the same protection should apply in this case.

### C. Resolution of the First Amendment Issue Would Materially Advance the Ultimate Termination of the Litigation

Finally, there is no doubt that resolving the First Amendment question in Google's favor "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin,* 381 F.3d at 1259. Indeed, as explained above, it would end this case. Properly applied here, the First Amendment provides an immunity that defeats any claim for defamation, tortious interference, or unfair trade practices. *See* Dkt. 86 at 13-14; *Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, No. 09-60397-CIV, 2009 U.S. Dist. LEXIS 73540, 2009 WL 2589148 (S.D. Fla. Aug. 19, 2009) (applying First Amendment to dismiss claim under FDUTPA). Ending the litigation promptly on this basis would make a material difference, moreover. Although this case has been pending for some time, Google has only recently filed its answer to plaintiff's SAC, and the parties still face a significant amount of discovery before they will be in a position to file motions for summary judgment. Prompt interlocutory review of the Court's Order may make all those proceedings, and potentially a trial, unnecessary. That would save considerable time and effort, and it would also vindicate the important role that the First Amendment plays in protecting search engines from litigation based on their editorial opinions regarding what items do, or do not, merit inclusion in search results.

\* \* \*

The Eleventh Circuit has explained that courts considering requests for interlocutory review under § 1292(b) requests should:

> ask if there is substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed. The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law. And the answer to that question must substantially reduce the amount of litigation left in the case.

*McFarlin*, 381 F.3d at 1259. That describes the First Amendment question in this case to a tee.

-10-

## **CONCLUSION**

For these reasons, Google respectfully requests that the Court certify its May 12, 2016 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated:  June 1, 2016

Respectfully submitted,

/s/ *Nathan M. Berman*
NATHAN M. BERMAN
Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd. , Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
nberman@zuckerman.com

BRIAN M. WILLEN (ADMITTED *PRO HAC VICE*)
WILSON SONSINI GOODRICH & ROSATI
1301 AVENUE OF THE AMERICAS, 40TH FLOOR
NEW YORK, NY  10019
BWILLEN@WSGR.COM

*COUNSEL FOR GOOGLE INC.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.

                                                            /s/ Nathan M. Berman
                                                            Nathan M. Berman