IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| e-ventures Worldwide, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:14-cv-00646-JES-CM |
| | : | |
| Google, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT GOOGLE'S MOTION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL**

Plaintiff e-ventures Worldwide, LLC ("e-ventures") submits this response to Google's Motion for Certification of Interlocutory Appeal (Dkt. 92).

As an initial matter, Google, Inc. ("Google") did not indicate to e-ventures that Google would be filing this motion before it was filed. Local Rule 3.01(g) states that:

> Before filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion.

This was not done here.

e-ventures is not opposed to the Court certifying its order on the motion to dismiss for interlocutory appeal, if (1) the underlying action is stayed while the appeal is pending; and (2) the Court and Eleventh Circuit agree that the appeal is appropriate under 28 U.S.C. 1292(b). Whereas Google has comparatively endless financial resources to litigate this matter, e-ventures

5743833 v1

is a small business.  e-ventures' financial resources would be strained if it was forced to litigate against Google's legal teams simultaneously before this Court and before the Eleventh Circuit, which may factor in to Google's strategy here.  e-ventures is confident that the Eleventh Circuit will agree that this Court's decision on the motion to dismiss was correct and that may materially advance the ultimate termination of the litigation.  After the Court's Order on the Motion to Dismiss, Google cut off settlement discussions and walked away from the settlement table, refocusing its efforts on attempting to overturn the Court's Order.  e-ventures believes that Google is likely to appeal the issue after trial and the parties will ultimately end up before the Eleventh Circuit.  Thus, it may indeed serve judicial economy and best conserve e-ventures' own financial resources to allow the Eleventh Circuit to decide the issue sooner rather than later.  If the Eleventh Circuit rejects Google's arguments on appeal (and e-ventures believes that it should), then this matter may be more capable of resolution at that juncture.

In arguing its Motion to Dismiss, Google's primary argument was under Section 230 of the Communications Decency Act.  Google now appears to have abandoned that argument and is asking only for its First Amendment defense to be considered on appeal.  Google does not clarify whether it will attempt to raise the other defenses that Google argued in its Motion to Dismiss at a later stage.  It may best serve judicial economy for all of Google's arguments related to the Motion to Dismiss to be either raised or waived.

Finally, Google's Motion for Certification argues the merits of Google's First Amendment defense, similar to a motion for reconsideration.  However, Google had an opportunity to move the Court to reconsider its decision on the First Amendment, and did not do so.  Google filed a motion for reconsideration limited to e-ventures' Lanham Act claim.  e-

ventures will not belabor the merits of Google's First Amendment defense, but will respond to only a few key points raised in Google's Motion for Certification, as follows:

> **1. Google's statement that the Court has drawn an "artificial distinction between search rankings and search removals" is contradicted by Google's own statements to the public.**

As cited in e-ventures' Second Amended Complaint (Dkt. 75, ¶¶ 36-48), and admitted in Google's Answer (Dkt. 88, ¶¶ 36-48), Google makes a variety of statements to the public about Google's search rankings and removals. These statements draw a clear distinction between the algorithms that impact Google's search rankings and Google employees' manual action in removing all of a person's or company's websites from Google's search results entirely. For example, Google's Answer admits that Google "informs customers that Google removes content from its search results only in particular circumstances" (Answer, ¶ 36) and Google states that customers should "[s]ee [Google's] Removal Policies to learn more about what information Google will remove." (Complaint, ¶ 46(c)). Google cannot argue that the Court is creating an artificial distinction when Google itself makes the same distinction in its published policies.

Likewise, Google argues that "[w]hether to include certain websites in search results is informed by the same editorial and policy considerations as ranking decisions," but Google's publications state the opposite (*Id*. at ¶¶ 41, 46). In any event, this allegation by Google is an unsupported factual statement that must be resolved at trial, not on a motion to dismiss.

> **2. Google never explains why it cannot simply bury, or reduce the ranking of, websites that it feels are not "most useful and relevant in response to a given search query."**

There is no allegation by Google that e-ventures' websites were in any way harmful to users, unlawful, or otherwise deserving of censorship. (Answer, ¶ 46(h)). Google's only justification proffered for the removals is that e-ventures' websites were ranked higher than they

should have been ranked.  In other situations where Google feels a website is ranked too high, it algorithmically or manually causes it to be ranked lower.  Despite Google's statement that the Court's Order will negatively impact Google's business, Google has advanced no reason that it even needs to remove less relevant websites from its search results entirely, as opposed to simply ranking them lower.  Moreover, after this lawsuit was filed, Google restored e-ventures' websites with the same website content (Complaint, ¶ 50), undercutting Google's argument that this case is about relevance.

Google's explanation contained in its response to e-ventures' motion for preliminary injunction was more credible.  Google stated: "we…take 'manual action'…when we believe it appropriate to deter bad behavior."  (Google's Declaration of Brandon Falls, Dkt. 30, ¶ 6).  Google's removed 366 of e-ventures' websites to "efficiently use Google's resources," and did not review each website individually.  *Id*.  Google deters or punishes companies and individuals that are promoting SEO with manual delisting, and Google has an anti-competitive reason to do so.  "Punishment" is not the same thing as trying to determine what content is "most useful and relevant" for users.  Google was taking action against the <u>company</u> and not the <u>content</u>, but the First Amendment is directed to protecting decisions related to <u>content</u>.

Google's argument that the decision will "chill protected speech" is ironic; e-ventures is the company whose speech was chilled, because e-ventures could not create *any* websites that would be viewed by *anyone*, on the world's most widely-viewed search engine.  e-ventures created a website that stated only "bye bye world" and it was quickly removed by Google.  (Complaint, ¶ 34).  Google has advanced <u>no justification</u> as to why Google needs to "deter" companies and individuals in this manner and why that decision should be entirely unreviewable in courts of law when there is a clear anti-competitive motive here.

> **3.     The lack of transparency in Google's conduct is surprising, particularly because Google boasts about its transparency**.

Google boasts that its copyright infringement removals and legal removals are extremely transparent. (*Id*. ¶¶ 44-46). Google removes content at a third party's request very reluctantly and provides an identification of what has been removed to the public. *Id*. In contrast, there is no transparency related to "pure spam" removals. The public knows nothing about how many websites are excluded by Google as "pure spam," what type of websites are excluded, and why those websites were excluded. e-ventures submits that if this is Google's position, then it should not be informing the public that "Google search results are a reflection of the content publicly available on the web," that "[i]t is Google's policy not to censor search results," that Google's Removals Policies identify the "different types of content that Google will remove from web, image or video results," and that Google publishes data that "sheds light on how laws and policies affect Internet users and the flow of information online," among other statements. *Id*.

Google argues that the Court's Order will "undermine the utility of search engines," but e-ventures fails to see how requiring Google to be more accurate in its public statements and to have some accountability for some removals (under very specific circumstances), is <u>not</u> beneficial to the public. Google suggests that it should have total and absolute immunity – even if a Google employee arbitrarily and maliciously targets a business' websites for personal or anti-competitive reasons, knowing that Google's action will cause astronomical financial damage to that business. Giving Google, who controls 70-90% of the market, absolute immunity in those circumstances would not benefit the public and is unrelated to search engine utility.

    **4.**    **Google's statement that "other courts have come to different conclusions in nearly identical circumstances" is false.**

e-ventures agrees that this case involves a novel legal issue, but not that the Court's decision is contrary to any prior decision. There is no other published case with "nearly identical" circumstances. There is simply no other case pending in a court of law where Google admits removing hundreds of websites associated with a person or company from its search results and Google had an anti-competitive basis to remove the websites. There is no other case where Google is alleged to have not even reviewed the person's or company's websites before removing them. (Complaint, Dkt. 75, ¶ 58). In fact, Google never explains how it is exercising "editorial discretion" under the First Amendment when it is *not even reviewing the content that it is removing*.

As detailed in e-ventures' papers (Opposition to Motion to Dismiss, Dkt. No. 79, at 11-12), *Zhang* involved no allegation of anti-competitive behavior and involved Chinese censorship of specific political opinions. *Langdon* was brought by a *pro se* individual who ran a Google advertisement containing offensive personal attacks about a named individual, and *only the offensive advertisement for the website was removed by Google*. There is no indication in the *Langdon* case that Google delisted this individual's websites from search results, as was done here. *Search King* did not involve removals, only rankings. Thus, as the Court recognized, the holdings in these cases do not conflict with the Court's holding.

In addition, Google cites T*he Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971) for the proposition that the First Amendment applies "even if the writer claimed that he was excluded for malicious or anti-competitive motives," but the writer did not make that claim in *Times Mirror Co*. In that case, an advertiser sought to compel a newspaper to

6

accept ad copy that included deviate sexual content in violation of its Screening Code, but the newspaper had no anti-competitive motive to exclude the advertisement.

Finally, Google ignores the case that is in e-ventures' view the most relevant precedent - *Lorain Journal Co. v. United States,* 342 U.S. 143, 152, 155 (1951).  In that case, the Supreme Court recognized that a decision to boycott a company for anti-competitive reasons is not protected by the First Amendment.  e-ventures was similarly targeted and banned here.

In sum, e-ventures agrees that (1) this is a dispositive legal question; (2) the case presents a novel legal issue; and (3) the appeal *may* advance the ultimate resolution of the litigation.  In addition, e-ventures believes that the Court's decision was well-founded and should be affirmed on appeal.

|  |  |
|---|---|
|  | By:   /s/Alexis Arena<br>Alexis Arena, Esq.<br>*Admitted pro hac vice*<br>**FLASTER/GREENBERG P.C.**<br>1600 John F. Kennedy Blvd., 2nd Floor<br>Philadelphia, PA  19103 |
| Dated:  June 9, 2016 | *Attorneys for Plaintiff e-ventures Worldwide, LLC* |

## CERTIFICATE OF SERVICE

      I hereby certify that on June 9, 2016, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.

|  |  |
|---|---|
|  | By: */s/Alexis Arena* |
|  | Alexis Arena, Esq. |
|  | *Admitted pro hac vice* |
|  | **FLASTER/GREENBERG P.C.** |
|  | 1600 John F. Kennedy Blvd., 2nd Floor |
|  | Philadelphia, PA  19103 |
| Dated:  June 9, 2016 | *Attorneys for Plaintiff e-ventures Worldwide, LLC* |