# RAFFERTY EXHIBIT 23

E-VENTURES WORLDWIDE, LLC,

     **Plaintiff,**

v.                          **Case No. 2:14-cv-646-FtM-29CM**

GOOGLE INC.,

     **Defendant.**

_____/

## GOOGLE INC.'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Following meet-and-confers conducted on August 26, 2015 and May 31, 2016, Defendant Google Inc. ("Google"), by the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 33, hereby serves these amended responses and objections to Plaintiff e-ventures Worldwide, LLC's First Set of Interrogatories propounded June 12, 2015.

## GENERAL OBJECTIONS

Google asserts the following General Objections to Plaintiff's First Set of Interrogatories (the "Interrogatories"), each of which is incorporated by reference into the response to each individual request below. For purpose of emphasis, Google may restate one or more of the General Objections as specific objections to individual document requests. Such restatement, or the failure to restate, should not be taken as a waiver of any General Objection.

1.     Google objects to the Interrogatories to the extent that the information sought is subject to any legal privilege or doctrine which prevents or limits its disclosure to third parties, including without limitation, the attorney-client privilege, the attorney work product privilege, the accountant-client privilege, or any other privilege or immunity, exemption from disclosure, or right that Google is entitled by law to assert.

2.     Google objects to the Interrogatories to the extent that they call for production of

information that Google is precluded from disclosing by law (e.g., the Electronic Communications Privacy Act) or by virtue of any contractual obligation.

3.      Google objects to the Interrogatories to the extent that they call for production of information of a Google user to whom notice of the Interrogatories has not been provided under Google's policies and who has not been given the opportunity to appear.

4.      Google objects to the Interrogatories to the extent that they seek to impose a duty on Google which exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

5.      Google objects to Plaintiff's "Definitions and Instructions" to the extent that they purport to impose obligations that differ from or exceed the obligations imposed by the Federal Rules of Civil Procedure

6.      Google objects to the Interrogatories to the extent that they seek public information to which Plaintiff has equal access and which can just as easily be obtained by Plaintiff.

7.      Google objects to the Interrogatories to the extent that they seek the information of others, or information that is more reasonably or equally obtainable from others.

8.      Google objects to the Interrogatories to the extent that they attempt to obtain information concerning significant and important contentions before Google has had adequate time to conduct the requisite investigation and discovery.

9.      Google does not represent that its understanding or use of terms contained in the Interrogatories accords with the meaning intended by Plaintiff.

10.     By responding to these Interrogatories, Google does not concede that the information produced is properly discoverable or admissible. To the contrary, Google reserves

the right to object to further discovery regarding the subject matter of the information produced and to object to the introduction into evidence of statements made in response to the Interrogatories.

11.     Google's responses to the Interrogatories will be based upon information and documentation that are available as of the date hereof and Google reserves the right to supplement, clarify and amend its responses. Moreover, a failure to object herein shall not constitute a waiver of any objection that Google may make as part of any future supplemental answers or responses.

12.     Google incorporates each of the preceding objections into its responses to each of the Interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**

**1.     Identify all Persons with knowledge of Google's removal, de-indexing and/or delisting of any e-ventures' websites (and/or any of the websites associated with Webmaster Tools account analytics@topseos.com) from Google's search listings**.

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, and unduly burdensome. Google further objects that this interrogatory is unlimited in temporal scope and the request to identify "all Persons" is not limited to persons reasonably known to Google. Google further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege. Moreover, Google has already identified individuals likely to have knowledge regarding the subject matter of this lawsuit in its Initial Disclosures.

Subject to and without waiver of the foregoing objections, and based on the parties' agreement regarding the scope of this Interrogatory, Google responds as follows:

As set out in Google's Initial Disclosures, the following Persons at Google may have knowledge of the removal, de-indexing or delisting of e-ventures' websites in and around September and October 2014:

Brandon Falls
Brian White
Cody Kwok

**INTERROGATORY NO. 2**

**2.     Identify each and every website that Google removed from its search listings related to e-ventures (and/or associated with the Webmaster Tools account analytics@topseos.com).**

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, and unduly burdensome. Google further objects that this interrogatory is unlimited in temporal scope and could include websites unrelated to the subject matter of this lawsuit and outside the scope of Plaintiff's claims.

Subject to and without waiver of the foregoing objections, and based on the parties' agreement regarding the scope of this Interrogatory, Google responds as follows:

On or around September 18, 2014, Google removed the following websites related to e-ventures from its natural search listings:

azentec.com/
best3dwebdesignservices.com/
bestachprocessingcompanies.com/
bestachprocessors.com/
bestadvertisingnetworks.com/
bestaffiliatemarketingcompanies.com/
bestandroiddevelopmentcompanies.com/
bestaspnetdevelopmentservices.com/
bestattorneysonline.com/
bestbankruptcylawfirms.com/
bestblackberrydevelopmentservices.com/
bestbrandingservices.com/
bestcakephpdevelopmentservices.com/
bestcalltrackingservices.com/
bestcashadvancecompanies.com/
bestcheckprocessingservices.com/
bestcivilrightslawyers.com/
bestcoldfusiondevelopmentcompanies.com/
bestconciergeservices.com/
bestconstructionattorneys.com/
bestcontextualadvertisingcompanies.com/
bestconversionrateoptimizationfirms.com/
bestcreditcardprocessingservices.co.uk/
bestcreditcardprocessors.co.uk/
bestcriminaldefenselawfirms.com/
bestdigitalmarketingagencies.com/
bestdivorcelawfirms.com/
bestdjangodevelopmentservices.com/
bestdrupaldevelopmentservices.com/

bestecommerceseoservices.com/
bestemailmarketingagencies.com/
bestemailmarketingfirms.com/
bestemploymentlawfirms.com/
bestemvcomplianceservices.com/
bestentertainmentlawyers.com/
bestenvironmentalattorneys.com/
bestequipmentleasingcompanies.com/
bestestatelawfirms.com/
bestexplainervideoservices.com/
bestfacebookdevelopmentservices.com/
bestflashdevelopmentservices.com/
bestfrauddetectionservices.com/
bestgamedevelopmentagencies.com/
bestgamedevelopmentservices.com/
bestgiftcardservices.com/
besthighriskprocessingcompanies.com/
besthighriskprocessors.com/
besthosts.in/
bestimmigrationlegalservices.com/
bestinfographicdesignservices.com/
bestinsurancecompaniesonline.com/
bestinternationalpaymentprocessingcompanies.com/
bestinternationalseoservices.com/
bestinternetlawfirms.com/
bestipaddevelopmentcompanies.com/
bestiphonedevelopers-australia.com/
bestiphonedevelopers.co.uk/
bestiphonedevelopers.com/
bestiphonedevelopers.in/
bestiphonedevelopmentcompanies.com/
bestiplawfirms.com/
bestjoomladevelopmentservices.com/
bestlandingpageoptimizationservices.com/
bestleadcapturesoftware.com/
bestlinkbuildingcompanies.co.uk/
bestlinkbuildingcompanies.in/
bestlinkbuildingcompaniesaustralia.com/
bestlinkbuildingcompaniescanada.com/
bestlinkbuildingcompaniesindia.in/
bestlinkbuildingfirms.com/
bestlocalseoagencies.com/
bestlocalseoagenciescanada.com/
bestlocalseocompanies.co.uk/
bestlocalseocompanies.in/
bestlocalseocompaniesaustralia.com/

bestlocalseocompaniescanada.com/
bestlocalseofirms.com/
bestmagentodevelopmentservices.com/
bestmarketingautomationsoftware.com/
bestmarketingfirms.com/
bestmedicalmalpracticelawfirms.com/
bestmerchantcashadvanceservices.com/
bestmerchantservicereviews.com/
bestmerchantservicescanada.com/
bestmerchantservicesguide.com/
bestmicropaymentsolutions.com/
bestmilitaryattorneys.com/
bestmobilecreditcardprocessingcompanies.com/
bestmobilemarketingcompanies.com/
bestmobileprocessors.com/
bestmobilewebdevelopmentcompanies.com/
bestofluxury.com/
bestofluxuryrankings.com/
bestonlinebankdepositservices.com/
bestonlinecreditcardprocessingservices.com/
bestonlinecreditcardprocessors.com/
bestoscommercedevelopmentservices.com/
bestpayforperformanceseoservices.com/
bestpaymentgatewayservices.com/
bestpaymentplatforms.com/
bestpayrollcompanies.com/
bestpayrollservices.com/
bestpcicompliancecompanies.com/
bestpcicomplianceservices.com/
bestphpdevelopmentservices.com/
bestposcompanies.com/
bestpossystemcompanies.com/
bestppcagencies.co.uk/
bestppcagenciesaustralia.com/
bestppcagenciescanada.com/
bestppcbidmanagementsoftware.com/
bestppcbidmanagementtools.com/
bestppccompanies.co.uk/
bestppccompanies.in/
bestppccompaniesaustralia.com/
bestppccompaniescanada.com/
bestppccompaniesindia.in/
bestppcmanagementcompanies.com/
bestppcmanagementfirms.com/
bestppcs.com/
bestprcompanies.com/

bestprivatejetservices.com/
bestpsdtohtmlservices.com/
bestrankcheckingsoftware.com/
bestrealestatelawfirms.com/
bestreputationamangementservices.com/
bestreputationmanagementagencies.co.uk/
bestreputationmanagementagencies.com/
bestreputationmanagementagenciescanada.com/
bestreputationmanagementcompanies.co.uk/
bestreputationmanagementcompanies.in/
bestreputationmanagementcompaniesaustralia.com/
bestreputationmanagementcompaniescanada.com/
bestreputationmanagementservices.com/
bestreputationmanagmentagencies.com/
bestresponsivewebdesignfirms.com/
bestresponsivewebdesignservices.com/
bestretailcreditcardprocessingcompanies.com/
bestretailprocessors.com/
bestretirementdestinations.com/
bestretirementrankings.com/
bestrubyonrailsdevelopmentservices.com/
bestsecuritieslawfirms.com/
bestseoagencies.co.uk/
bestseoagenciesaustralia.com/
bestseoagenciesindia.in/
bestseocompanies.in/
bestseocompaniesaustralia.com/
bestseocompaniescanada.com/
bestseocompaniesguide.com/
bestseocompaniesindia.in/
bestseocompaniesrankings.com/
bestseocompaniesreviews.com/
bestseoconsultants.com/
bestseoconsulting.com/
bestseocopywritingservices.com/
bestseofirms.co.uk/
bestseofirmscanada.com/
bestseoresellers.com/
bestseos-australia.com/
bestseos-canada.com/
bestseos-india.com/
bestseos-uk.com/
bestseos.co.in/
bestseos.com/
bestseos.in/
bestseoscanada.com/

bestseosguide-australia.com/

bestseosguide-canada.com/

bestseosguide.com/

bestseosguide.in/

bestseosoftwarecomparison.com/

bestseosoftwarevendors.com/

bestsharepointdevelopmentservices.com/

bestsmallbusinessloanproviders.com/

bestsocialmediamanagementsoftware.com/

bestsocialmediamarketingagencies.com/

bestsocialmediamarketingcompanies.co.uk/

bestsocialmediamarketingcompanies.com/

bestsocialmediamarketingcompanies.in/

bestsocialmediamarketingcompaniesaustralia.com/

bestsocialmediamarketingcompaniescanada.com/

bestsymfonydevelopmentservices.com/

besttaxlegalservices.com/

bestuserinterfacedesigncompanies.com/

bestvideoproductionservices.com/

bestvideoseoservices.com/

bestwebanalyticssoftware.com/

bestwebdesignagencies.com/

bestwebdesignagencies.in/

bestwebdesignagenciesguide.com/

bestwebdesigncompanies.in/

bestwebdesigncompaniesaustralia.com/

bestwebdesigncompaniescanada.com/

bestwebdesigncompanyreviews.com/

bestwebdesignfirms.co.uk/

bestwebdesignfirms.com/

bestwebdevelopmentagencies.com/

bestwebdevelopmentcompanies.co.uk/

bestwebdevelopmentcompanies.in/

bestwebdevelopmentcompaniesaustralia.com/

bestwebdevelopmentcompaniescanada.com/

bestwebdevelopmentfirms.com/

bestwebdevelopmentservices.com/

bestwebhostingfirms.com/

bestwebsitedesignagencies.com/

bestwebsitedesignfirms.com/

bestwebstrategyservices.com/

bestwindowsphonedevelopmentcompanies.com/

bestwordpressdevelopmentservices.com/

bwda-australia.com/

bwda-canada.com/

bwdafirms.com/

bwdaguide.com/
bwdanews.com/
bwdarankings.com/
bwdaratings.co.uk/
bwdaratings.com/
bwdaratings.in/
bwdareports.com/
collegecompare.com/
comparesem.com/
creditcardprocessingratings.com/
creditcardprocessingservices.co.uk/
creditcardprocessorreviews.com/
creditcardprocessorsguide.com/
digitaladsmart.co/
digitaladsmart.info/
digitaladsmart.net/
digitaladsmart.org/
digitaladsmarts.co/
digitaladsmarts.com/
digitaladsmarts.mobi/
digitaladsmarts.net/
digitaladsmarts.org/
employerpicks.com/
eventuresworldwide.com/
evenww.com/
franchisereviewer.com/
germanytopseos.com/
leadcapturesoftwarereviews.com/
merchantcashadvancefirms.com/
merchantservicesspecialists.com/
news-prs.com/
onlinemarketingforsmbs.com/
onlinemarketingforsmbs.net/
onlinemarketingprinciples.com/
onlinemarketingstandard.com/
onlinemarketingstandard.net/
onlinemarketingstandard.org/
onlinemarketingstandard.us/
payperclickdeals.com/
payperclickforums.com/
payperclickuniverse.com/
ppcuniverse.com/
predictgooglerank.com/
predictgoogleranking.com/
purchasesite.com/
reviewauthority.com/

searchmarketingmag.com/
searchmarketingmagazine.com/
searchmarketingstandard.com/
semcompare.com/
seoconsultants.com/
seoportal.biz/
seoportal.info/
seoportal.org/
seoportal.us/
tccp-reports.com/
tccpfirms.com/
tccpguide.com/
tccpnews.com/
tccprankings.co.uk/
tccprankings.com/
tccpratings.com/
tccpreports.com/
tccpservices.com/
top10personalinjuryattorneys.com/
topaccountingfirms.com/
topbrandingservices.com/
topbusinesslawfirms.com/
topcallcenters.com/
topcalltrackingsoftware.com/
topcreditcardprocessingservices.com/
topcreditcardprocessors-us.com/
topcreditcardprocessors.com/
topcreditcardprocessorscanada.com/
topcreditcardprocessorsguide.com/
topemailmarketingagencies.com/
topemailmarketingfirms.com/
tophighriskprocessors.co.uk/
tophighriskprocessors.com/
toplinkremovalservices.com/
toplocalseoagencies.com/
toplocalseoservices.com/
topmarketingagencies.com/
topmarketingautomationsoftware.com/
topmerchantcashadvancecompanies.com/
topmobilecreditcardprocessingcompanies.com/
toppayrollservices.com/ topposcompanies.com/
topppcbidmanagementtools.com/
topppcs.com/
topppcsservices.com/
toppragencies.com/
toppragenciesrankings.com/

topprcompanies.com/
toprankcheckingsoftware.com/
topreputationmanagementagencies.com/
topretailprocessors.com/
topseos-australia.com/
topseos-canada.com/
topseos-us.com/
topseos.ae/
topseos.cn/
topseos.co.il/
topseos.co.in/
topseos.co.nl/
topseos.co.nz/
topseos.co.uk/
topseos.co.za/
topseos.co/
topseos.com.ar/
topseos.com.au/
topseos.com.es/
topseos.com.my/
topseos.com/
topseos.hk/
topseos.in/
topseos.jp/
topseos.mx/
topseos.ph/
topseos.ru/
topseos.se/
topseos.sg/
topseosagencies.com/
topseosapplication.com/
topseosblacklist.com/
topseoscanadafirms.com/
topseoscanadarankings.com/
topseoscompanies.com/
topseosconflictresolution.com/
topseosevaluationcriteria.com/
topseosfaqs.com/
topseosfirms.co.uk/
topseosfirms.com/
topseosfirms.in/
topseosguide.co.uk/
topseosguide.com/
topseosguide.in/
topseosindia.in/
topseosnews.com/

topseospartnershipapplication.com/
topseosrankings.com/
topseosrankings.in/
topseosrankings.sg/
topseosratings.co.uk/
topseosratings.in/
topseosreports.com/
topseosresearch.com/
topseosreviews.com/
topseosservices.com/
topsocialmediamarketingcompanies.com/
topwebdevelopmentcompanies.com/
uk-topseos.com/
visibilitymagazine.com/

On or around October 8, 2014, Google removed the following additional websites related to e-ventures from its natural search listings:

bestattorneyrankings.com/
bestofluxuryresearch.com/
bestretirementdestinationsresearch.com/
bestwebdesignagenciesglobal.com/
bestwebdesignagenciesintl.com/
bestwebdesignagenciesresearch.com/
reviewauthorityrankings.com/
topppcsguide.com/
topseosglobal.com/
topseosprofiles.com/
topseosrankingsintl.com/

On or around October 10, 2014, Google removed the following additional website related to e-ventures from its natural search listings:

topseos-global.com/

**INTERROGATORY NO. 3**

**3.     For each and every website identified in response to Interrogatory No.2, identify (a) the basis for Google's removal of the website; (b) what changes e-ventures made to the website following the removal, to Google's knowledge, if any; (c) whether Google took any action to relist the website following its removal; and (d) if Google did take action to relist the website, the basis for such action.**

In addition to the general objections set forth above, Google reasserts its objections to Interrogatory No. 2 above to this interrogatory. Google further objects to this interrogatory on the

grounds that it is vague and ambiguous, overly broad, and unduly burdensome. Google further objects to this interrogatory on the grounds that its four separate subparts combine separate interrogatories into a single request. Google further objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or both.

Subject to and without waiver of the foregoing objections, and based on the parties' agreement regarding the scope of this Interrogatory, Google responds as follows. Google designates this response as Confidential under the parties' pretrial Protective Order (dated October 27, 2015).

**Basis for Google's Removal of e-ventures' Websites.** Google's decision to remove the e-ventures-related websites identified in its response to Interrogatory No. 2 came after a careful investigation of e-ventures' activities and a considered determination that e-ventures and/or its websites were violating various of the guidelines Google has in place to protect the quality and integrity of search results. Public information about Google's guidelines is avaiable (and was available in September 2014) at the following locations on Google's website:

> https://support.google.com/webmasters/answer/35769
> https://support.google.com/webmasters/answer/2604824
> https://support.google.com/webmasters/answer/2604777?hl=en
> https://support.google.com/webmasters/answer/2721306
> https://support.google.com/webmasters/answer/2721312
> https://support.google.com/webmasters/answer/66356
> https://support.google.com/webmasters/answer/2721311
> https://support.google.com/webmasters/answer/66361

In particular, Google removed the websites identified in response to Interrogatory No. 2 after concluding that: (1) those websites contained content that violated Google's guidelines; (2) the structure, organization, and linking practices of those websites violated Google's search-quality guidelines; and (3) those websites operated as part of a larger network designed to circumvent Google's guidelines and frustrate or evade Google's enforcement of those guidelines. Although e-ventures' websites engaged in numerous violations of Google's guidelines, three violations were particularly egregious and contributed most directly to the actions that Google took: the use of link schemes, scraped content, and doorway domains.

Link schemes violate Google's guidelines because they trick search engines into ranking sites more highly than they should be, to the detriment of users and search engines alike. Generally speaking, links to a site reflect an endorsement by the linking site of the linked site. Google takes into account the quality and quantity of other sites linking to (and thus seemingly recommending) a site as part of its highly-complex search result determinations. Unfortunately, because search engines use links to help assess reputation, unscrupulous site operators often engage in web or link spamming, attempting to gather unnatural endorsements or illegitimate links from all over the web. Some examples of e-ventures-related websites that Google determined were engaged in improper link schemes include: topseos.com, topseos.com.au, seoconsultants.com, bwdaguide.com, bestpayrollservices.com, eventuresworldwide.com, bestwebdesignagencies.com, azentec.com, and visibilitymagazine.com.

"Scraped content" refers to content pulled en masse from other websites and displayed on the new website without original content or commentary. Google's guidelines discourage the display of scraped content because it is typically unhelpful to users and generally considered of low value. Further, scraped content can artificially boost the ranking of the website taking the content relative to the site that actually created and posted it in the first place, thereby disincentivizing those sites from posting original content. Users seek the authoritative source of original content, and often will not want to visit site after site that offers the same content. Some examples of e-ventures-related websites that Google determined were displaying considerable quantities of scraped content, and therefore offering little to users that was original or valuable, include: www.topseos.com and www.collegecompare.com. Specific examples of scraped content include www.topseos.co.in/casestudies/glenn-gabe/6-tips-to-protect-a-large-and-complex-website-from-google-panda-case-study/30911/, which consisted of content scraped from searchenginewatch.com/article/2340097/6-Tips-to-Protect-a-Large-and-Complex-Website-From-Google-Panda-Case-Study, and www.topseos.com.au/casestudies/jellyfish/fitbit-case-study/30213/, which consisted of content scraped from www.jellyfish.net/seo-social/seo-case-studies/fitbit/.

"Doorway domains" or "doorway pages" are webpages that are set up to rank highly in search engine results for a particular word or phrase, capturing a percentage of users' visits not justified by the quality of their sites and the nature of the material that is actually offered there. Instead of offering users helpful original content, doorway pages typically contain duplicated content designed to mislead users, sometimes with minor variations designed to rank for a variety of keywords. Like scraped content, doorway domain content is pulled from another source on the Internet. Unlike scraped content, the duplicate content comes from another website operated by the same webmaster as the duplicate site. Doorway pages crowd search results by causing multiple entries to the duplicate pages to appear at the top of results. This deliberate "crowding" of search results harms legitimate website operators who get crowded out of search results by the duplicate pages, and it prevents search engines from serving distinct, relevant results to users' queries. Some examples of e-ventures-related websites that Google determined were operating as doorway pages include: topseos.ae, topseos.cn, topseos.co.il, topseos.co.nl, topseos.co.nz, topseos.co.za, topseos.com.ar, topseos.com.es, topseos.com.my, topseos.hk, topseos.jp, topseos.mx, topseos.ph, topseos.ru, topseos.se, and topseos.sg. In its communications to Google requesting relisting, e-ventures admitted that many of its websites could be collapsed into single domains, acknowledging and attempting to fix doorway domain problems by: consolidating 60 domains into the single domain topseos.com; consolidating 20 domains into the single domain bestwebdesignagencies.com; and consolidating 17 domains into the single domain topcreditcardprocessors.com.

After investigating e-ventures' extensive network of websites in or around August and September 2014, Google employee Brandon Falls discovered numerous e-ventures-related websites that were engaged in these practices. Mr. Falls was a core member of Google's search quality team. One of his primary job responsibilities is to identify websites and website operators that are violating Google's search quality guidelines and take appropriate action to protect the integrity of Google's search results when such violations are found. Even before beginning his investigation in August 2014, Mr. Falls was familiar with e-ventures and its tactics of seeking to artificially manipulate Google's search results. On six occasions between 2012 and mid-2014

Mr. Falls had reviewed e-ventures' websites, discovered violations of Google's guidelines, and recommended taking action against those websites (short of removing them). In addition to his first-hand experience with e-ventures' activities, Mr. Falls also reviewed records stretching back to 2005 in which Google had determined that various other e-ventures-related websites were in violation of Google's search-quality guidelines and imposed penalties on those websites that resulted in their demotion in search ranking.

In August and September 2014, based on his own history with e-ventures' misconduct, the records he reviewed showing violations dating back many years, and what he personally observed in investigating e-ventures' current crop of websites, Mr. Falls determined that more serious action against e-ventures and its network of websites was appropriate. He did not reach that conclusion lightly. As part of his investigation, Mr. Falls individually reviewed each of the e-ventures-related websites listed in response to Interrogatory No. 2. Based on that review, Mr. Falls concluded that e-ventures was violating Google's search quality guidelines in various ways.

Some e-ventures-related websites were engaging in unnatural linking. Many of the sites that Mr. Falls reviewed received numerous links through what is known as a "forum profile link scheme." For instance, several separate webpages, such as www.talltalk.com/forums/profile.php?id=4908, http://805bbr.com/forum/profile.php?id=12799, pangaforum.com/index.php?action=profile;u=7512, and http://beerxml.com/forum/index.php?action=profile;u=101354, that purported to be a profile of web user "joanna69mariz" were actually just collections of links to e-ventures' sites. On www.talltalk.com/forums/profile.php?id=4908 the user profile contains a link to one of e-ventures' websites, and on http://805bbr.com/forum/profile.php?id=12799, the user's "contact information" is actually a link to the e-ventures website, and her "signature" includes links to five additional e-ventures websites. Likewise on both pangaforum.com/index.php?action=profile;u=7512 and http://beerxml.com/forum/index.php?action=profile;u=101354, the profile's "signature" comprises the following text: "topseos and topseos and topseos and topseos," linking to four separate e-ventures-related websites. Other examples include forum profiles at http://www.webcosmoforums.com/members/love3man.html and http://www.weaponseducation.net/member.php?13876-goal6ice (containing links to bestpayrollservices.com); forum profiles at http://kompamagazine.com/board/memberlist.php?mode=joined&order=ASC&start=137900&sid=f7f14dd73e86aff6f8ba9ae371477534, http://www.ambl.org/fr99457/memberlist.php?mode=joined&order=ASC&start=89450&sid=bcc15e9acd0730e9030dcf52bf9438b4, and http://www.dreamcircuit.org/forum/memberlist.php?mode=joined&order=ASC&start=25200&sid=7614c457ac9a63d074ab0d4c49c7cfa6 (containing links to eventuresworldwide.com); forum profiles at http://bandittransamclub.com/smf/index.php?action=profile;u=17842, http://forum.geeksphone.com/index.php?action=profile;u=7405, and http://www.elantraxd.com/forums/member.php?24651-kellYpaRk14&tab=aboutme (containing links to bestwebdesignagencies.com); and link exchanges at http://www.autolinkexchanger.com/directory/Web-Site-Development.html, http://www.dreamznetsolutions.com/resources/webdesign_and_development3.html, and http://www.seobrains.com/directory/web-design.htm (containing links to azentec.com).

Numerous other e-ventures-related websites were engaged in "expired domain link schemes," where e-ventures either directly or through a third party acquired the domain names of expired websites and created low-quality content with text containing numerous links to other e-ventures' sites. For example, e-ventures adopted the expired former domain name of "The 10 Millionyear Foundation," http://www.10m-yfoundation.org/, and replaced the content of those pages with dozens of posts linking to different e-ventures' websites.

e-ventures was also repeatedly violating Google's guidelines concerning the use of scraped content. Mr. Falls observed massive usage of unaltered scraped content on numerous e-ventures' websites, many of which contained content that originally resided elsewhere. For instance, a single e-ventures website (www.topseos.com) contained over 18,000 scraped articles, 46,000 scraped press releases, and 28,126 scraped job listings. Similarly the e-ventures website www.collegecompare.com scraped descriptions of 2,198 universities from the non-e-ventures' website www.collegedata.com.

Google's investigation also revealed that e-ventures was making extensive use of duplicate domains as doorway pages that merely duplicated or linked to the content available on one of e-ventures' main websites, providing no additional value to users and serving merely to crowd Google's search results with replicated content. As an example, e-ventures maintained the following six webpages, all of which contained essentially the same duplicated content and linked back and forth among one another: www.topseosagencies.com, www.topseosguide.com, www.topseosfirms.com, www.topseosresearch.com, www.topseosreviews.com, and www.topseosservices.com. Similarly, www.bestbrandingservices.com/ duplicated content from www.toppragencies.com/public-relations-firms/brand-integration and reputationmanagement-consultants.bestreputationmanagementagencies.com/ duplicated content from www.topseos.com/reputationmanagement-consultants-research.

Based on these determinations and on e-ventures' long history of violating Google's guidelines, in September 2014, Mr. Falls recommended that all of the e-ventures' related websites he had reviewed be removed from search results. As explained above, Google had previously determined that e-ventures violated Google's search-quality guidelines and had so notified e-ventures, yet e-ventures was continuing to violate Google's guidelines in significant ways and on a large scale. Accordingly, Mr. Falls' recommendation was approved by his managers, and on September 18, 2014, all of the e-ventures-related websites identified above (in response to Interrogatory No. 2) were removed from Google's natural search results. That decision was made according to Google's established practices for enforcing its search-quality guidelines and as a direct result of the many serious violations evident in e-ventures' websites. More particularized descriptions of the problems with the removed websites can be found in documents that Google has or will produce in response to Plaintiff's Requests for Production. Those documents include: records compiled by Google employees during their investigation of e-ventures' websites, the notices Google sent to e-ventures regarding removal of its websites, the requests for reconsideration submitted by e-ventures, which acknowledged many of the problems, and the notices Google sent denying certain of e-ventures' reconsideration requests.

While Google's actions were based on its comprehensive review of e-ventures' numerous individual websites, Google intended its removal actions not just to focus on particular sites but on e-ventures' entire network. Google took action against the network as a whole for several reasons. First, the significant quantity of violations across many different e-ventures-related websites, and over many years, made it clear to Google that e-ventures' disregard for Google's search-quality guidelines was not isolated to a limited set of sites and did not appear to be accidental. This was a large-scale set of significant violations, and it had been going on for some time. That warranted a corresponding significant response from Google. Second, Google acted against the whole e-ventures network in an effort to prevent e-ventures from migrating problematic content from removed to unremoved websites (an evasive tactic known as "domain hopping"). As explained, Google's investigation had revealed that the e-ventures was operating a connected set of websites as part of a large-scale effort to manipulate Google's search results. Given that, Google determined that e-ventures was particularly likely to respond to the removal of certain of its websites by migrating problematic content to other websites under its control. Taking more limited action only against some of the sites that e-ventures was operating thus would likely have been ineffective. Had Google not removed the entire network of e-ventures' websites, e-ventures could have simply moved the objectionable content to some other, unremoved site.

In short, because of the breadth and scope of e-ventures' violations of Google's search-quality guidelines, as well as its past history of similar violations and the concerns about domain hopping and other circumvention efforts, Google determined that effectively enforcing its guidelines required taking action against e-ventures' full network. It was for that reason that Google removed the websites identified above on or around September 18, 2014.

In October of 2014, Google discovered that e-ventures had created new websites following the removal of the sites listed above. Google believed this was the sort of circumvention effort that it had feared. Upon examination, Google found these new websites contained the same or similar content as e-ventures' websites it had already removed, evidence that e-ventures was merely moving content to new domains rather than fixing the identified problems. After examining each of these new websites individually, Google determined that they also violated Google's search-quality guidelines due to, among other problems, continued use of scraped content and manually removed them from its natural search results. For example, one of the new websites, www.topseos-global.com, contained content scraped from at least three separate non-e-ventures' websites. The first of these follow-up removals occurred on October 8, and a second removal occurred on October 10.

**Relisting e-ventures' Websites.** When Google removes a website from its search results, it notifies the owner of that website of the removal if the website owner has registered with Google via a Webmaster Tools account. That notice invites the website owner to fix the violations of Google's guidelines present on the website and submit a written request for reinstatement of the changed website to Google by using the tools Google makes available on the webmaster dashboard. If, after reviewing the changed website, Google determines that it no longer violates Google's guidelines, Google will relist the website in its search results.

After Google removed e-ventures' websites from search results on September 18, 2014, e-ventures used this remedial process and submitted a number of its websites for relisting. After receiving these relisting requests, Google reviewed the websites to determine whether the previously identified issues had been fixed. On or about October 16-31, 2014 and November 3-13, 2014 Google received relisting requests, determined that some of the websites that e-ventures had submitted no longer contained the problems that Google had identified, and reinstated those websites. Where websites were relisted, e-ventures had made changes to address the problems that Google had identified and brought the websites into compliance with Google's guidelines. For example, in these requests e-ventures admitted that its websites contained "18,000+ Articles, 1,047 Case Studies, 46,000+ Press Releases, 890 Research Materials, 577 Books, 28,126 Job Listings, 1,711 Videos, [and] 7,813 Blog Listings" scraped from non-eventures websites. e-ventures stated that it had removed this content. e-ventures also admitted that many of its websites could be consolidated into single domains, and it said that it consolidated 60 domains into the single domain topseos.com, consolidated 20 domains into the single domain bestwebdesignagencies.com, and consolidated 17 domains into the single domain topcreditcardprocessors.com

After confirming the changes and relisting the websites, Google notified e-ventures that the changed websites had been relisted. Google sent the following standardized message to e-ventures with respect to each website that was reinstated via Google's reconsideration process:

> We've reviewed your site and found that it no longer violates our <a href="insert_site">webmaster guidelines</a>. As a result, relevant and useful content from your site may appear in Google's index with improved ranking. Note that it may be several days before indexing changes take effect and for these changes to be reflected in the site summary page status message.

The websites that e-ventures submitted for relisting are identified in the reconsideration requests e-ventures submitted to Google, which Google has produced or will produce in response to Plaintiff's Requests for Production. Those restored websites include:

> azentec.com/
> bestiphonedevelopers.com/
> bestofluxury.com/
> bestpayrollservices.com/
> bestretiremementdestinations.com/
> bestseos.com/
> bestwebdesignagencies.com/
> collegecompare.com/
> eventuresworldwide.com/
> payperclickuniverse.com/
> reviewauthority.com/
> searchmarketingstandard.com/
> seoconsultants.com/
> topaccountingfirms.com/
> topcreditcardprocessors.com/

topppcs.com/
toppragencies.com/
topseos.com/

## INTERROGATORY NO. 4

**4.    For each and every website identified in response to Interrogatory No.2, describe and state whether Google is still taking any action to "penalize" the website and/or otherwise impact its placement in Google's search results. Your response should identify any factors that are currently impacting or affecting how the website is displayed or ranked on Google.**

In addition to the general objections set forth above, Google reasserts its objections to interrogatory No. 2 above to this interrogatory. Google further objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, and unduly burdensome. Google further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence in connection with Plaintiff's claims in this case, which do not address how websites are "ranked" in Google's search results.

Google designates this response as Confidential under the parties' pretrial Protective Order (dated October 27, 2015).

Subject to and without waiver of the foregoing objections, and based on the parties' agreement regarding the scope of this Interrogatory, Google responds as follows:

As described above in response to Interrogatory No. 3, website operators may seek reinstatement of websites that Google has removed by showing that the violations of Google's search-quality guidelines have been remedied. As explained above, e-ventures availed itself of that process for certain of the sites that had been removed, which resulted in the relisting of certain of its websites in Google search results. There remain approximately 296 e-ventures-related domains that continue to be excluded from search results:

    best3dwebdesignservices.com/
    bestachprocessingcompanies.com/
    bestachprocessors.com/
    bestadvertisingnetworks.com/
    bestaffiliatemarketingcompanies.com/
    bestandroiddevelopmentcompanies.com/
    bestaspnetdevelopmentservices.com/
    bestattorneyrankings.com/
    bestattorneysonline.com/
    bestbankruptcylawfirms.com/
    bestblackberrydevelopmentservices.com/
    bestbrandingservices.com/
    bestcakephpdevelopmentservices.com/
    bestcalltrackingservices.com/
    bestcashadvancecompanies.com/
    bestcheckprocessingservices.com/ftc

bestcivilrightslawyers.com/
bestcoldfusiondevelopmentcompanies.com/
bestconciergeservices.com/
bestconstructionattorneys.com/
bestcontextualadvertisingcompanies.com/
bestconversionrateoptimizationfirms.com/
bestcreditcardprocessingservices.co.uk/
bestcreditcardprocessors.co.uk/
bestcriminaldefenselawfirms.com/
bestdigitalmarketingagencies.com/
bestdivorcelawfirms.com/
bestdjangodevelopmentservices.com/
bestdrupaldevelopmentservices.com/
bestecommerceseoservices.com/
bestemailmarketingagencies.com/
bestemailmarketingfirms.com/
bestemploymentlawfirms.com/
bestemvcomplianceservices.com/
bestentertainmentlawyers.com/
bestenvironmentalattorneys.com/
bestequipmentleasingcompanies.com/
bestestatelawfirms.com/
bestexplainervideoservices.com/
bestfacebookdevelopmentservices.com/
bestflashdevelopmentservices.com/
bestfrauddetectionservices.com/
bestgamedevelopmentagencies.com/
bestgamedevelopmentservices.com/
bestgiftcardservices.com/
besthighriskprocessingcompanies.com/
besthighriskprocessors.com/
besthosts.in/
bestimmigrationlegalservices.com/
bestinfographicdesignservices.com/
bestinsurancecompaniesonline.com/
bestinternationalpaymentprocessingcompanies.com/
bestinternationalseoservices.com/
bestinternetlawfirms.com/
bestipaddevelopmentcompanies.com/
bestiphonedevelopers-australia.com/
bestiphonedevelopers.co.uk/
bestiphonedevelopers.in/
bestiphonedevelopmentcompanies.com/
bestiplawfirms.com/
bestjoomladevelopmentservices.com/
bestlandingpageoptimizationservices.com/

bestleadcapturesoftware.com/
bestlinkbuildingcompanies.co.uk/
bestlinkbuildingcompanies.in/
bestlinkbuildingcompaniesaustralia.com/
bestlinkbuildingcompaniescanada.com/
bestlinkbuildingcompaniesindia.in/
bestlinkbuildingfirms.com/
bestlocalseoagencies.com/
bestlocalseoagenciescanada.com/
bestlocalseocompanies.co.uk/
bestlocalseocompanies.in/
bestlocalseocompaniesaustralia.com/
bestlocalseocompaniescanada.com/
bestlocalseofirms.com/
bestmagentodevelopmentservices.com/
bestmarketingautomationsoftware.com/
bestmarketingfirms.com/
bestmedicalmalpracticelawfirms.com/
bestmerchantcashadvanceservices.com/
bestmerchantservicereviews.com/
bestmerchantservicescanada.com/
bestmerchantservicesguide.com/
bestmicropaymentsolutions.com/
bestmilitaryattorneys.com/
bestmobilecreditcardprocessingcompanies.com/
bestmobilemarketingcompanies.com/
bestmobileprocessors.com/
bestmobilewebdevelopmentcompanies.com/
bestofluxuryrankings.com/
bestofluxuryresearch.com/
bestonlinebankdepositservices.com/
bestonlinecreditcardprocessingservices.com/
bestonlinecreditcardprocessors.com/
bestoscommercedevelopmentservices.com/
bestpayforperformanceseoservices.com/
bestpaymentgatewayservices.com/
bestpaymentplatforms.com/
bestpcicompliancecompanies.com/
bestpcicomplianceservices.com/
bestphpdevelopmentservices.com/
bestposcompanies.com/
bestpossystemcompanies.com/
bestppcagencies.co.uk/
bestppcagenciesaustralia.com/
bestppcagenciescanada.com/
bestppcbidmanagementsoftware.com/

bestppcbidmanagementtools.com/
bestppccompanies.co.uk/
bestppccompanies.in/
bestppccompaniesaustralia.com/
bestppccompaniescanada.com/
bestppccompaniesindia.in/
bestppcmanagementcompanies.com/
bestppcmanagementfirms.com/
bestppcs.com/
bestprcompanies.com/
bestprivatejetservices.com/
bestpsdtohtmlservices.com/
bestrankcheckingsoftware.com/
bestrealestatelawfirms.com/
bestreputationamangementservices.com/
bestreputationmanagementagencies.co.uk/
bestreputationmanagementagencies.com/
bestreputationmanagementagenciescanada.com/
bestreputationmanagementcompanies.co.uk/
bestreputationmanagementcompanies.in/
bestreputationmanagementcompaniesaustralia.com/
bestreputationmanagementcompaniescanada.com/
bestreputationmanagementservices.com/
bestreputationmanagmentagencies.com/
bestresponsivewebdesignfirms.com/
bestresponsivewebdesignservices.com/
bestretailcreditcardprocessingcompanies.com/
bestretailprocessors.com/
bestretirementdestinationsresearch.com/
bestretirementrankings.com/
bestrubyonrailsdevelopmentservices.com/
bestsecuritieslawfirms.com/
bestseoagencies.co.uk/
bestseoagenciesaustralia.com/
bestseoagenciesindia.in/
bestseocompanies.in/
bestseocompaniesaustralia.com/
bestseocompaniescanada.com/
bestseocompaniesguide.com/
bestseocompaniesindia.in/
bestseocompaniesrankings.com/
bestseocompaniesreviews.com/
bestseoconsultants.com/
bestseoconsulting.com/
bestseocopywritingservices.com/
bestseofirms.co.uk/

bestseofirmscanada.com/
bestseoresellers.com/
bestseos-india.com/
bestseos.co.in/
bestseos.in/
bestseoscanada.com/
bestseosguide-australia.com/
bestseosguide-canada.com/
bestseosguide.in/
bestseosoftwarecomparison.com/
bestseosoftwarevendors.com/
bestsharepointdevelopmentservices.com/
bestsmallbusinessloanproviders.com/
bestsocialmediamanagementsoftware.com/
bestsocialmediamarketingagencies.com/
bestsocialmediamarketingcompanies.co.uk/
bestsocialmediamarketingcompanies.com/
bestsocialmediamarketingcompanies.in/
bestsocialmediamarketingcompaniesaustralia.com/
bestsocialmediamarketingcompaniescanada.com/
bestsymfonydevelopmentservices.com/
besttaxlegalservices.com/
bestuserinterfacedesigncompanies.com/
bestvideoproductionservices.com/
bestvideoseoservices.com/
bestwebanalyticssoftware.com/
bestwebdesignagenciesglobal.com/
bestwebdesignagenciesintl.com/
bestwebdesigncompanies.in/
bestwebdesigncompaniesaustralia.com/
bestwebdesigncompaniescanada.com/
bestwebdesigncompanyreviews.com/
bestwebdesignfirms.co.uk/
bestwebdesignfirms.com/
bestwebdevelopmentagencies.com/
bestwebdevelopmentcompanies.co.uk/
bestwebdevelopmentcompanies.in/
bestwebdevelopmentcompaniesaustralia.com/
bestwebdevelopmentcompaniescanada.com/
bestwebdevelopmentfirms.com/
bestwebdevelopmentservices.com/
bestwebhostingfirms.com/
bestwebsitedesignagencies.com/
bestwebsitedesignfirms.com/
bestwebstrategyservices.com/
bestwindowsphonedevelopmentcompanies.com/

bestwordpressdevelopmentservices.com/
bwdanews.com/
comparesem.com/
creditcardprocessingratings.com/
creditcardprocessingservices.co.uk/
creditcardprocessorreviews.com/
creditcardprocessorsguide.com/
digitaladsmart.co/
digitaladsmart.info/
digitaladsmart.net/
digitaladsmart.org/
digitaladsmarts.co/
digitaladsmarts.com/
digitaladsmarts.mobi/
digitaladsmarts.net/
digitaladsmarts.org/
employerpicks.com/
evenww.com/
franchisereviewer.com/
germanytopseos.com/
leadcapturesoftwarereviews.com/
merchantcashadvancefirms.com/
merchantservicesspecialists.com/
news-prs.com/
onlinemarketingforsmbs.com/
onlinemarketingforsmbs.net/
onlinemarketingprinciples.com/
onlinemarketingstandard.com/
onlinemarketingstandard.net/
onlinemarketingstandard.org/
onlinemarketingstandard.us/
payperclickdeals.com/
payperclickforums.com/
ppcuniverse.com/
predictgooglerank.com/
predictgoogleranking.com/
purchasesite.com/
reviewauthorityrankings.com/
searchmarketingmag.com/
searchmarketingmagazine.com/
semcompare.com/
seoportal.biz/
seoportal.info/
seoportal.org/
seoportal.us/
tccpnews.com/

top10personalinjuryattorneys.com/
topbrandingservices.com/
topbusinesslawfirms.com/
topcallcenters.com/
topcalltrackingsoftware.com/
topcreditcardprocessingservices.com/
topemailmarketingagencies.com/
topemailmarketingfirms.com/
tophighriskprocessors.co.uk/
tophighriskprocessors.com/
toplinkremovalservices.com/
toplocalseoagencies.com/
toplocalseoservices.com/
topmarketingagencies.com/
topmarketingautomationsoftware.com/
topmerchantcashadvancecompanies.com/
topmobilecreditcardprocessingcompanies.com/
toppayrollservices.com/
topposcompanies.com/
topppcbidmanagementtools.com/
topppcsguide.com/
topppcsservices.com/
topprcompanies.com/
toprankcheckingsoftware.com/
topreputationmanagementagencies.com/
topretailprocessors.com/
topseos-australia.com/
topseos.co/
topseosapplication.com/
topseosblacklist.com/
topseoscanadafirms.com/
topseoscanadarankings.com/
topseoscompanies.com/
topseosconflictresolution.com/
topseosevaluationcriteria.com/
topseosfaqs.com/
topseosfirms.co.uk/
topseosfirms.in/
topseosglobal.com/
topseosguide.co.uk/
topseosguide.in/
topseosindia.in/
topseosnews.com/
topseospartnershipapplication.com/
topseosrankings.in/
topseosrankings.sg/

topseosratings.co.uk/
topseosratings.in/
topsocialmediamarketingcompanies.com/
topwebdevelopmentcompanies.com/

There are two circumstances that would cause these websites to remain excluded from Google's search results.

First, if e-ventures submitted a request for reinstatement, but failed to fix all of the identified problems on a particular website, Google notified e-ventures of the remaining problems and did not reinstate the website. Because these websites continue to violate Google's guidelines, these websites continue to not be listed in Google's search results. For example, e-ventures submitted a list of 38 websites for reconsideration on November 24, 2014. However, these websites were still engaged in link schemes in violation of Google's guidelines, which Google explained to e-ventures in response to the reinstatement request. The problems that led Google to reject these relisting requests from e-ventures are set out in the notices Google sent to e-ventures through the Google Search Console. Those documents have been produced or will be produced in response to Plaintiff's Requests for Production.

Second, any of the removed websites that e-ventures did not submit for reinstatement would remain unlisted in Google search results. That is the situation for many of the websites listed above, which were "doorway" domains that had little or no original content to start with. Because e-ventures has not indicated that it has fixed, or had any interest in fixing, the violations that were found in connection with those websites, Google continues to keep them out of its search results for the reasons identified in response to Interrogatory No. 3.

With respect to the e-ventures' websites that were reinstated (as identified in response to Interrogatory No. 3), Google is not currently taking any manual action in regards to those sites that would affect their ranking in Google's search results. Nor does the current ranking of those websites take into account the fact of manual penalties that were previously imposed on them.

**INTERROGATORY NO. 5**

**5.     For each and every website identified in response to Interrogatory No.2, describe in detail the mechanism and means by which the website was removed from Google's search results or de-indexed by Google.**

In addition to the general objections set forth above, Google reasserts its objections to Interrogatory No. 2 above to this interrogatory. Google further objects that this interrogatory is vague and ambiguous, and overly broad, especially in its requests for a description "in detail" of Google's "mechanism and means" for removing websites from its search results or indices. Google further objects to this interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence in connection with Plaintiff's claims in this case.

Google designates this response as Confidential under the parties' pretrial Protective Order (dated October 27, 2015).



**INTERROGATORY NO. 6**

**6.     Identify every website that Google has characterized as "pure spam," from 2005 to the present, and penalized and/or removed from Google's search listings on that basis.**

In addition to the general objections set forth above, Google objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and the temporal scope of the request is unreasonable. Google further objects to this interrogatory on the grounds that it seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. In particular, the interrogatory seeks information regarding the removal of sites that have no bearing on the claims in Plaintiff's complaint. Google further objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or both.

Subject to and without waiver of the foregoing objections, Google responds as follows:

Google has taken action against vast numbers of websites for violations of its search-quality guidelines, including millions of instances (if not more) where domains were removed from search results after being identified as "pure spam." Statistics and other information about Google's efforts to counteract the effects of spam in its search results can be found at http://www.google.com/insidesearch/howsearchworks/fighting-spam.html. As this document (which was publicly available in September 2014) explains, Google classifies a website as "pure spam" where the "[s]ite appears to use aggressive spam techniques such as automatically generated gibberish, cloaking, scraping content from other websites, and/or repeated or egregious violations of Google's Webmaster Guidelines." The volume of pure spam removals from Google search results is considerable. Indeed, in one month alone, Google removed more than 450,000 domains as pure spam. For Google to attempt to identify every single website that it has removed from search results on that basis would be incredibly burdensome and would not reasonably be calculated to lead to the discovery of admissible evidence in this case.

**INTERROGATORY NO. 7**

**7. For each and every website identified in response to Interrogatory No. [6], state the basis for Google characterizing the website as "pure spam" and whether the website engaged in advertising, offering and/or promoting "search engine optimization" (SEO) services**.

In addition to the general objections set forth above, Google reasserts its objections to Interrogatories No. 6 above to this interrogatory. Google further objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence relevant to Plaintiff's claims in this case.

Subject to and without waiver of the foregoing objections, Google responds as follows:

Google has taken action against vast numbers of websites for violations of its search-quality guidelines, including millions of instances (if not more) where domains were removed from search results after being identified as "pure spam." Statistics and other information about Google's efforts to counteract the effects of spam in its search results can be found at http://www.google.com/insidesearch/howsearchworks/fighting-spam.html. Google further explains the nature of its manual removal of "pure spam" at https://support.google.com/webmasters/answer/2604777?hl=en. As these public documents explain, Google classifies a website as "pure spam" where the "[s]ite appears to use aggressive spam techniques such as automatically generated gibberish, cloaking, scraping content from other websites, and/or repeated or egregious violations of Google's Webmaster Guidelines." The volume of pure spam removals from Google search results is considerable. Indeed, in one month alone, Google removed more than 450,000 domains as pure spam. For Google to attempt to identify every single website that it has removed from search results on that basis, state the reasons for identifying each website as pure spam, would be incredibly burdensome and would not reasonably be calculated to lead to the discovery of admissible evidence in this case. Whether such websites "engaged in advertising, offering and/or promoting 'search engine optimization'

(SEO) services" is particularly irrelevant. Google does not classify websites as "pure spam" or take manual action to penalize websites because they are engaged in the business of promoting or offering SEO services. Consistent with that policy, e-ventures' websites were not penalized or removed from Google's search results because they advertised, offered, or promoted SEO services. Those websites were removed for the reasons described above, in response to Interrogatory No. 3.

**INTERROGATORY NO. 8**

**8.    Identify all instances in which Google has engaged in "site scraping" between 2005 and present.**

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is vague and ambiguous (in particular, as to the undefined term "site scraping"), overly broad, and unduly burdensome. Google further objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. In particular, Google's use or non-use of "site scraping" (under any definition) is irrelevant to the claims Plaintiff asserts in this case. Google further objects that the temporal scope of this interrogatory is unreasonable. Google further objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or both.

At the parties' August 26, 2015 meet-and-confer, e-ventures agreed to withdraw this Interrogatory.

**INTERROGATORY NO. 9**

**9.    Identify all actions taken by Google to impact or influence how any website associated with or owned by Google is displayed on search engines at websites such as Bing.com and Yahoo.com.**

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. In particular, sites owned by Google and Google's actions with respect to other search engines are irrelevant to the claims Plaintiff asserts in this case. Google further objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and unlimited in temporal scope.

At the parties' August 26, 2015 meet-and-confer, e-ventures agreed to withdraw this Interrogatory.

**INTERROGATORY NO. 10**

**10.   List the names and addresses of all Persons who are believed or known by Google to have any knowledge concerning any of the issues in this lawsuit and specify the subject matter about which Person has knowledge.**

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is vague and ambiguous, overly broad, and unduly burdensome. In particular, Plaintiff fails to identify "the issues" or "subject matter" that are the subject of this request. Google further objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or both.

Subject to and without waiver of said objections, and based on the parties' agreement regarding the scope of this Interrogatory, Google responds that it identified individuals likely to have knowledge regarding the subject matter of this lawsuit in its Initial Disclosures and in response to Interrogatory No. 1 above.

**INTERROGATORY NO. 11**

**11.  Identify all Persons, other than counsel, who supplied any information contained in each answer to these Interrogatories, and identify by number those Interrogatories for which each named Person supplied information.**

In addition to the general objections set forth above, Google objects to this interrogatory on the grounds that it is unduly burdensome, not calculated to lead to the discovery of admissible evidence relevant to Plaintiff's claims in this case, and because it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or both.

At the parties' August 26, 2015 meet-and-confer, e-ventures agreed to withdraw this Interrogatory.

**INTERROGATORY NO. 12**

**12.  Does Google intend to call any expert witnesses at the trial of this case? If so, state as to each such witness, the name, business address and area of expertise of the witness, the subject matter upon which the witness is expected to testify, the facts and opinions to which the witness will testify, and a summary of the grounds of each opinion.**

As discussed during met-and-confers conducted on August 26, 2015 and May 31, 2016, the parties will exchange information regarding expert discovery at a mutually agreeable time.

Dated: June 10, 2016                                          Respectfully submitted,

                                                             */s/ Brian M. Willen*
                                                             _____
Brian M. Willen (admitted *pro hac vice*)                    Nathan Berman, Fla. Bar No. 0329230
Wilson Sonsini Goodrich & Rosati                             Zuckerman Spaeder LLP
1301 Avenue of the Americas, 40th Floor                      101 East Kennedy Blvd., Suite 1200
New York, NY 10019                                           Tampa, FL 33602
(212) 497-7700                                                (813) 221-1010

*Counsel for Google Inc.*

## VERIFICATION

I, Brandon Falls, declare:

I am a Search Quality Analyst on the Search Quality Team of Google Inc., Defendant in the above-captioned action. I have read the foregoing **Google Inc.'s Amended Responses and Objections to Plaintiff's First Set of Interrogatories**, and the matters set forth therein are true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Mountain View, California on June 10, 2016.

Brandon Falls

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 10, 2016, the foregoing was served via e-mail to the

following:

>Alexis Arena
>FLASTER/GREENBERG P.C.
>alexis.arena@flastergreenberg.com
>
>John Christian Clough, Esq.
>Zung Clough, PLLC
>jclough@zungclough.com
>
>*Counsel for Plaintiff e-ventures Worldwide, LLC*


By: ___*/s Brian M. Willen*_____
           Brian M. Willen